No. 14,895.

ALBERT-ROSS REFRIGERATOR AND FIXTURE COMPANY *v.*
PASTORE.
(111 P. [2d] 231)

Decided February 24, 1941.   Rehearing denied March 17, 1941.

Mr. HARRY A. FEDER, for plaintiff in error.

Mr. PHILIP HORNBEIN, JR., for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS action was commenced in justice court by defendant in error to enforce payment of an hourly bonus

of ten cents per hour for 2,060 hours, pursuant to the terms of a written contract entered into between the Albert-Ross Refrigerator & Fixture Company and defendant in error, covering the years 1939 and 1940. He had judgment for the full amount, $206. Plaintiff in error appealed from this decision to the county court, where it was no more successful, and judgment in the same amount was rendered in favor of defendant in error. Reference will be made herein to plaintiff in error as the company, and to defendant in error as Pastore. Reversal is sought on an application for supersedeas.

No question is raised as to the validity or construction of the contract. The essence of the agreement was that if Pastore would render exclusive service to the company for two years, it would pay him a bonus of ten cents an hour for each hour of work performed by him while employed in its behalf. Ross, secretary of the company, who had charge of the employees, testified that the reason for requiring a signed contract from the employees was that the business—manufacturing cabinets and ice boxes to be used in grocery stores and meat shops—was highly competitive, and that certain competitors frequently attempted to lure the company's skilled employees, of whom Pastore was admittedly one, away from its employ.

The bonus was paid for the year 1938, during which, every employee entitled to a bonus was given a slip at the end of each month showing the amount of his bonus for that month. About January 1, 1939, Pastore was advised orally that because of business conditions generally he would not receive any bonus for 1939. There is dispute as to Pastore's reply when so advised. However, the evidence shows that after receiving some advice he continued working for the company, but that he received no bonus slips during 1939.

The terms of the contract—in addition to demanding exclusive services to be rendered by Pastore for and on

behalf of the company—forbade his entering the employ of a competitor for a period of three months following termination of his employment by the company.

We asume, without deciding, that this is the kind of contract for skilled personal services that will be specifically enforced, where necessary, if it is feasible to do so. Pomeroy's Specific Performance (3d ed.), pp. 687, 688. Counsel for the company inferentially so admits, but seeks to avoid responsibility, his reasons being: 1. Admissions of counsel for Pastore in his opening statement. 2. Estoppel of Pastore from seeking to enforce contract. 3. Waiving by Pastore of his right to the bonus.

■ 1. The pertinent part of the opening statement was: "And the very first week of January of that year, if your Honor please, the defendant corporation, through its officers, informed the plaintiff employee, they were not going to live up to the terms of that contract. Verbally, of course, Mr. Pastore insisted upon his rights, stating he had his contract which he was going to work under; of further significance is this, your Honor—the defendant employer corporation is in the habit of giving out what they call 'bonus slips' to their employees, and these bonus slips show just how much the employee is credited with from week to week. Now it is significant, from the first week of January '39, the plaintiff, Pastore, did not receive a single bonus slip; in other words, it was their intention from the very outset to ignore this contract; they never did intend to live up to it, and they haven't."

Counsel for defendant says that this constitutes an admission that the company had rescinded its contract. Even so, it would not necessarily follow that there was any admission of the consequences of rescission. However, we need not decide whether the above quoted language amounted to a confession of rescission. The words "rescind," "rescinded," or "rescission" do not appear in the quoted language, but assuming that it was the in-

tention of the company "to ignore this contract," which in effect would be a rescission, there was no concession by Pastore of his rights under the contract. It will be noted, too, that Pastore's counsel stated: "Mr. Pastore insisted upon his rights."

■ 2 and 3. We shall treat both the alleged estoppel and waiver together, because with Pastore's repudiation —which the trial court had a right to believe, and did —of the attempted rescission, he was clearly within his rights to continue working, and his cause of action did not arise under the contract until the end of 1939. Pastore was entitled to make inquiry as to what his rights under the contract were, and upon being informed as to what they were, to act accordingly, thereby complying with the terms of the contract, as they applied to him, until his cause of action accrued. There is no basis for either estoppel or waiver in his failure to protest the discontinuance of his bonus slips, since they are not mentioned in the contract. There was no change in position or any misleading of the company by Pastore's continuing his work.

There is some conflict in the testimony as to what Pastore did, but there is clear, competent testimony to support the court's conclusion that no new oral contract was ever intended to replace the formal written one, and in this connection it may be noted that the company obtained written releases from contracts signed by other employees similarly situated, with apparent intent to escape liability under such contracts.

■ Since no special assignments of error are made, other than that the judgment was contrary to the law and evidence, that the judgment was wrong, and that the court erred in holding the contract to be valid, no further discussion is necessary.

Judgment affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK, MR. JUSTICE OTTO BOCK and MR. JUSTICE HILLIARD concur.