**W. B. STOWERS, Appellant,**

v.

**Robert L. HARPER, Appellee.**

**No. 5.**

Court of Civil Appeals of Texas.

Tyler.

Feb. 13, 1964.

Rehearing Denied March 12, 1964.

O. O. Touchstone and John B. Webster, Dallas, for appellant.

James L. Mitchell, Braecklein, Mitchell, Thorpe & Lewis, Dallas, William J. McKie, Corsicana, for appellee.

MOORE, Justice.

This is a suit by Robert L. Harper, plaintiff, against his former employer, W. B. Stowers, defendant, in which plaintiff seeks to recover additional compensation, which he alleges to be due him for the years 1956 through 1960, under the terms of a written contract of employment. The parties will be referred to as they appeared in the Trial Court. On January 15, 1956, plaintiff and defendant entered into a written contract, by the terms of which plaintiff was to act as a salesman for the defendant who was a manufacturer's representative. Plaintiff was to furnish his own automobile upon which he was required to carry public liability insurance; either party had a right to terminate the contract on thirty days' notice. The contract further provided that all prior negotiations were merged therein, and that any change, correction, amendment or supplemental agreement was to be in writing and signed by both parties before it would be binding.

The disagreement by the parties arose over the manner and method of computing the payments due under paragraphs 3 and 4 of the contract and forms the basis of this suit. Paragraphs 3 and 4 read in part as follows:

"3. * * * and for each and every full calendar year during the continued performance thereof the salesman is, as compensation only and not as a right to share in the profits or losses, entitled to an amount equivalent to twenty-five per cent (25%) of the gross profits, if any, of the business of Stowers, which gross profits have been earned as a result of the conduct of such business being carried on as a manufacturers' agent during the specific calendar year; such figure of 25% of the gross profits is to be computed and arrived at by deducting from the gross receipts all business expenses of any kind and character, including the hereinafter provided for traveling expenses

and drawing account of the Salesman, but not including the personal expenses and traveling expenses of Stowers. From such sum of 25% of the gross profits thus arrived at, there shall be deducted from the sum due the Salesman any withholding taxes due, as well as any advances or expenses which have been advanced to the Salesman or for his benefit for trips to marketing conventions and any other advancements which might have been made for personal expenses of the Salesman disconnected with the business. * * * Such compensation is to be arrived at and computed in accordance with the books and records of Stowers and it is to be final and indisputable on the part of the Salesman when furnished in accordance with the books and records of Stowers. * * *

"4. During the continuance of performance hereunder, the Salesman is entitled to a drawing account of the equivalent of Four Hundred Fifty Dollars ($450.00) per month, such sum thus advanced to be advanced at the regular time each month when Stowers makes such advancement; he is further entitled to an allowance of seven cents (7¢) per mile for the number of miles actually traveled by the Salesman in the performance of his duties under this contract, such allowance to be the only allowance or payment made for the use of the Salesman's automobile in the solicitation of orders or business. The Salesman is likewise entitled to reimbursement of the actual expenses of all meals and hotel bills which are necessarily expended by him while traveling in the prescribed territory in the performance of his duties under this contract. * * *"

There was no dispute between the parties as to the amount of gross receipts of the business or the amount of the expenses, drawing account, travel expense, hotel bills or meals for each of the years in question.

As far as the testimony is concerned, there was little dispute except in two instances. First, defendant says that when he made the first payment to plaintiff for the year 1956, plaintiff made a complaint about the amount of the payment, and upon being advised to read the contract, plaintiff returned the following day and said "we settled according to the contract". Secondly, defendant testified that he furnished plaintiff an accounting of the business each year showing the computation of his earnings or, if not furnished him personally, same was placed in his mail box in the office. He further testified that the company books and accounts were available and open to him at all times. Plaintiff denied that he had ever received any such accounting in any of the years of his employment, or that the company books and accounts were ever made available to him.

Plaintiff further testified that he was dissatisfied with the amount of compensation paid him in settlement of the account each year but that he remained silent and did not make any complaint because he wanted to continue to work and "Because you just don't complain to Mr. Stowers," and "when you are over the barrel, you keep your mouth shut".

Approximately seven months after the termination of the contract by mutual consent in May, 1960, plaintiff brought this suit. In his pleading plaintiff alleges that defendant was at all times in possession of the books of account and that he had no way of knowing what he was entitled to until this suit was filed. He sues for an accounting contending that the method of computation used by defendant in determining his compensation under the contract for the year 1956, and all years subsequent, was incorrect and that he was entitled to substantially more than he had been paid.

The defendant entered a general denial and also plead that there had been a modification of the terms of the contract by the parties; that plaintiff had waived the provisions of the contract and was estopped,

and in the alternative that the contract was ambiguous and required interpretation.

The case was tried in the court without a jury and judgment was rendered in favor of plaintiff for additional compensation for each of the years 1957 through 1960, totaling the sum of $29,869.41, from which defendant perfected this appeal. The Trial Court made findings of fact and conclusions of law, which can be summarized as follows.

Under findings of fact, the court found that the contract was prepared by defendant's attorney; that plaintiff was in the employment under the contract from February 1, 1956 to May 20, 1961, at which time the contract was terminated by mutual consent; that he drew $450.00 for each and every month and was reimbursed for travel; that the contract was not in any way changed, corrected, modified, amended or supplemented by the parties during its existence; that defendant never furnished any accounting to plaintiff during this time showing gross profits of the business; that the gross profits, as defined by the employment contract, for each of the years in question were as follows: 1957-$37,295.64; 1958—$33,081.28; 1959—$35,835.20; 1960—$29,785.64.

Under conclusions of law, the court found the contract was not ambiguous; that plaintiff was to receive 25% of gross profits of the business each year, which gross profit was to be computed by deducting from gross receipts of the business all business expense, including the travel expense and drawing account of plaintiff; that the $450.00 drawing account and travel expense, mentioned under paragraph 4 of the contract, should not be charged against or deducted from the gross profit of 25% after same has been computed under paragraph 3; that acceptance by plaintiff of a lesser amount each year than was due under the contract did not amount to a waiver of plaintiff's right to receive all that was due under the contract; that the evidence failed to establish that plaintiff had full knowl-

edge that additional sums were due him under the contract, or that there was any intent on his part to waive his right to receive additional sums; that the evidence failed to establish waiver; that plaintiff was not estopped to claim the balance due under the contract; that no act or acts of plaintiff in any way misled defendant to his detriment; that the compensation due for 1956 is barred by the statute of limitations; that plaintiff should have judgment for $29,869.41, to all of which defendant excepted. Defendant also filed a request for additional findings of fact and conclusions of law, which were refused by the court.

Defendant testified that he computed the compensation due the plaintiff for the year 1957 in accordance with the following illustration, which was the same method he used in each subsequent year, to-wit:

| | | |
|---|---|---|
| Gross Commissions | | $54,522.95 |
| Less Business Expense (only) | | 6,615.06 |
| GROSS PROFIT | | $47,907.89 |
| Gross amount due plaintiff in 1957 | | |
| (25% of the $47,907.89) | | $11,984.47 |
| Less Drawing Account & Exp. | | 10,612.23 |
| BALANCE DUE PLAINTIFF FOR 1957 | | $ 1,372.24 |

On the other hand, plaintiff contends that for the year 1957 and subsequent years, the following method should have been used, to-wit:

| | | |
|---|---|---|
| Gross Commissions | | $54,522.95 |
| Less: Business Expenses | $ 6,615.06 | |
| Drawing Account & Exp. | 10,612.23 | |
| | $17,227.29 | 17,227.29 |
| GROSS PROFIT | | $37,295.64 |
| Amount due plaintiff in 1957 | | |
| (25% of the $37,295.64) | | $ 9,323.91 |

There is a considerable difference in the two methods.

As will be shown by the above illustration, the defendant contends that the term "gross profits" has a definite accepted meaning as used in the business world, and that it means it is a sum arrived at by deducting business expenses such as office expense, rent, stationery, telephone, etc., *excluding drawing account and travel expenses*, from gross receipts. He then contends that plaintiff is entitled to 25% of that figure, less what had been advanced to him by way of drawing account and travel expenses.

Plaintiff, on the other hand, contends that the contract defines "gross profit" and contains a formula for arriving at "gross profit" in that the contract provides that in arriving at the "gross profit" "all business expenses of any kind and character, *including the hereinafter provided for travel expenses and drawing account of the salesman*" shall be deducted from the gross receipts, which result will be the "gross profit". (Emphasis supplied). Under plaintiff's interpretation, he should be entitled to 25% of the "gross profit" thus computed and, under the contract, the only amount which could be deducted was (1) any with-

holding taxes due; (2) any advances or expenses which had been advanced to him or for his benefit for trips to marketing conventions; or (3) any other advances made to him for personal expenses disconnected with the business.

Under defendant's points one through six, he contends that as a matter of law conduct of the parties amounts to a modification of the contract; that the plaintiff has waived his right to further compensation, and by his conduct he led defendant to believe he would not claim additional compensation and in reliance thereon he refrained from termination of plaintiff's employment, and that he should therefore be estopped to claim further compensation. He contends that the judgment for the plaintiff is so overwhelmingly against the weight and preponderance of the evidence that same is clearly wrong and unjust.

■ We will first consider the question of modification of the contract. A written contract, not required to be in writing, may be modified by a parol agreement, and thereafter the contract becomes a parol agreement in its entirety. Purdin v. Jenkins, Tex.Civ.App., 337 S.W.2d 418; Maddox Motor Co. v. Ford Motor Co., Tex. Com.App., 23 S.W.2d 333. There was no evidence of an express agreement to modify the contract, but defendant contends that by accepting the amount paid him each year without complaint, plaintiff impliedly agreed to a modification, thereby agreeing to accept defendant's method of arriving at the gross profit of the business. The determination of the existence of a modification of a contract will depend upon the intention of the parties, and therefore becomes a question of fact. San Antonio Machine & Supply Co. v. Allen, Tex.Civ. App., 268 S.W. 532. The burden of proof was on the defendant. He must prove that his proposed modification was made known to the plaintiff and that the plaintiff accepted the terms of his proposed modification. The old contract prevails until terminated by both parties, and in order

to prove a new contract so that gross profits would be calculated in a different manner from that provided by the written contract, it was necessary to show that notice thereof was given directly or indirectly, and that plaintiff accepted. Actual notice is required and constructive notice is not sufficient. Plaintiff had a right to rely upon the terms of the written contract and was not bound to exercise diligence to learn of the method used by defendant in computing the amount due him. Pennington v. Thompson Bros. Lumber Co., 122 S.W. 923.

■ The finding by the Trial Court that there was no modification is supported by the evidence, in that the plaintiff testified that he did not know the method used by defendant in computing his compensation and did not have access to the company books and accounts. Plaintiff cannot be held to have accepted a method different to the terms of a contract of which he had no knowledge. J. R. Gray Co. v. Jacobs, Tex.Civ.App., 362 S.W.2d 167, 172; San Antonio Machine & Supply Co. v. Allen, supra.

■ What we have heretofore said in regard to modification, would apply to some extent to the defenses of waiver and estoppel.

"A waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon that right. Knowledge of the existence of the right on the part of the party claimed to have made the waiver is an essential prerequisite to its relinquishment. No one can be said to have waived that which he does not know, or where he has acted under a misapprehension of the facts." Bering Mfg. Co. v. W. T. Carter & Bro., Tex.Civ.App., 255 S.W. 243, 252; Ferguson v. Mounts, Tex.Civ.App., 281 S.W. 616; 13 Tex.Jur.2d para. 330.

Intention is a prime factor in determining the question of waiver. The acts, words or conduct relied upon to establish intention must be such as to manifest an unequivocal intention to no longer assert the right. Waiver by implication will be applied only to prevent fraud or inequitable consequences. Tony v. McClelland, Tex.Civ.App., 283 S.W. 679, 681; Jordan Drilling Co. v. Starr, Tex.Civ.App., 232 S.W.2d 149, 159.

As has already been pointed out, the plaintiff testified that he did not have knowledge of the method used by his employer in computing his share of the profits, nor did he have access to the books so as to audit the figures. The Trial Court chose to believe this testimony, as he had a right to do, and we believe it is sufficient to sustain the Trial Court's finding that the plaintiff did not waive his right to further compensation.

On the issue of estoppel, defendant contends that since the plaintiff accepted the amount paid him each year without complaint and without demanding an accounting, plaintiff thereby led him to believe that the method he was using in computing his share of the profits was satisfactory and that he, plaintiff, would not insist on additional compensation even though he should be entitled to more under the terms of the contract. He insists that because of this conduct, he was deprived of the opportunity to discharge plaintiff at an earlier date, causing him to suffer detriment and that the plaintiff should now be estopped from claiming additional compensation.

Although defendant did testify that he would have discharged plaintiff in 1956, had he known that the plaintiff was claiming additional compensation, the record shows that the plaintiff performed his service in a satisfactory manner and that there was a substantial profit in the defendant's business during each of the years he was employed. The Trial Court found that the plaintiff was not estopped to claim the balance due under their agreement, "because the act or acts of plaintiff relied on by defendant to establish estoppel did not mislead the defendant to his detriment nor cause him to waive any right that he had." In other words, the Trial Court concluded that the defendant was not in fact misled and that the failure on the part of the defendant to pay the plaintiff what he should have been paid did not amount to a detriment to the defendant.

"The rule is fundamental that, unless the representation of the party to be estopped has been acted upon by the other party in a way different from the way he otherwise would have acted, and to his prejudice, no estoppel arises. [Waxahachie Nat.] Bank v. Beilharz, 94 Tex. 493, 62 S.W. 743." Clem Const. Co. v. Parker, Tex.Civ.App., 272 S.W. 228, 230. Also see Fruth v. Gaston, Tex.Civ.App., 187 S.W.2d 581; Culkin v. Neiman-Marcus Co., Tex.Civ.App., 354 S.W.2d 397; Albert-Ross Ref. & Fixture Co. v. Pastore, 107 Colo. 286, 111 P.2d 231.

In view of the protest by the plaintiff of the amount due and the manner of calculation used by defendant when he received his first year's compensation at the end of 1956, and in view of defendant's assurance to him that he had correctly paid him according to the contract, as well as the other evidence on the issue, we believe the finding made by the Trial Court is supported by the evidence.

Under points seven, eight, nine, and ten, defendant takes the position that the contract is ambiguous and that we should adopt the construction placed on the contract by the parties themselves. The question of whether a written contract is ambiguous or not is one of construction and interpretation. Ambiguity may be said to appear when, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of the two meanings is the proper one. If the plain language

is not susceptible to more than one meaning, there is nothing to construe. General American Indemnity Company v. Pepper, 161 Tex. 263, 339 S.W.2d 660; 17A C.J.S. Contracts § 294.

Defendant contends that the language used in paragraph 4 of the contract clearly shows that the $450.00 per month paid to the plaintiff was an advancement made against future profits, while paragraph 3 treats the $450.00 per month as a salary, thus creating an ambiguity. He contends that the terms "advanced" and "advancement" as used in connection with the term "drawing account" in paragraph 4 has a well defined meaning in the business world and should be construed to mean that the employer is thereby furnishing the employee with a means of maintenance while commissions or profits are accruing and are to be deducted from such commissions or profits after they have accrued.

■■■ As we view this contract, it has but one meaning. It simply states that the plaintiff is to receive 25% of the profits calculated according to the formula as set forth in paragraph 3. The formula there set out is clear and leaves no room for construction. It clearly provides what the "advancement" of $450.00 per month, as provided for in paragraph 4, is to be charged against. It provides in paragraph 3 that such "advancements" made into the drawing account are to be deducted and charged against the gross receipts of the business. Nowhere do we find that the "advancement" to the drawing account is to be deducted from the plaintiff's share of the profits. To construe the contract as meaning that the amount "advanced" on drawing account must be deducted from plaintiff's share of the profits, when the contract provides that they are to be deducted from the gross receipts of the business, would be to revise the agreement while professing to construe it, which we are not at liberty to do. General American Indemnity Company v. Pepper, supra.

Furthermore, paragraph 3 specifically enumerates the items which are to be deducted from plaintiff's share of the profits. It provides that (1) withholding taxes, (2) advances or expenses which may have been advanced to the salesman or for his benefit for trips to marketing conventions, (3) or any other advancement for personal expenses will be deducted from his share of the profits. The "advancement" referred to here does not, in our opinion, refer to the advancement made to him on his drawing account. It is significant to note that while the term "drawing account" is frequently used in both paragraphs 3 and 4, yet the term was not mentioned in enumerating the items that were to be deducted from plaintiff's share of the profits. If the parties had intended that the drawing account was one of the items which was to be deducted from the plaintiff's share of the profits, it would have been simple to so have provided. We fail to find any ambiguity.

■■■ As was shown by the evidence, this contract was drawn by the defendant and therefore if there should be any doubt in regard to the construction of same, such doubt must be resolved most strongly against the defendant and in favor of the plaintiff. Stated in another way, even though the contract reasonably admits of two constructions, that one is to be adopted which is least favorable to the party whose language it is. Amory Manuf'g Co. v. Gulf, C. & S. F. Ry. Co., 89 Tex. 419, 37 S.W. 856; Smith v. McMillan, Tex.Civ. App., 352 S.W.2d 871, aff'd in part, Sup., 363 S.W.2d 437.

■■■ Having concluded that the contract is not ambiguous, we fail to see any error in the Trial Court's refusal to admit in evidence a letter written by the defendant to the plaintiff a few days before the execution of the written contract. The letter merely explained the interpretation which the defendant placed upon paragraphs 3 and 4 of the contract, and would in

no event be admissible unless there was some ambiguity.

The construction placed upon the contract by the Trial Court was correct.

Defendant's points attacking the judgment of the court as being against the overwhelming weight and preponderance of the evidence have been considered in accordance with the rule announced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and same are hereby overruled for the want of merit.

The judgment of the Trial Court is affirmed.