**AMERICAN BRAKE SHOE COMPANY,**
Appellant,

v.

**B. F. COOMBS d/b/a B. F. Coombs Company, Appellee.**

No. 293.

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 31, 1967.

Rehearing Denied Sept. 28, 1967.

Neal King, of Hill, King & McKeithan, Mission, for appellant.

Asa V. Bland, of Atlas, Schwarz, Gurwitz & Bland, McAllen, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial in favor of B. F. Coombs, d/b/a B. F. Coombs Company, appellee here and plaintiff below, against American Brake Shoe Company, a corporation, appellant here and defendant below, in the amount of $12,134.29.

Appellee sued appellant for commissions allegedly owing under a written agreement effective June 1, 1960, under which appellee was appointed a commission agent for the sale of alloy casting products within Texas and Louisiana to be manufactured by the Electro-Alloys Division of appellant. Appellee's recovery was based upon (1) the amount of $6,958.94 representing 10% commission on sales of merchandise made by him prior to December 31, 1964, not actually shipped until after that date but prior to February 8, 1965, and (2) the amount of $5,175.35 representing 3% commission on two sales made to Union Carbide Corporation, one in 1960 and the other in 1964, on orders originating outside of appellee's territory, but which he claimed were placed pursuant to his promotional activities entitling him to such commission under certain provisions of the contract.

Appellant asserts thirteen points of error. Appellant's first seven points and appellee's first three counterpoints relate to appellee's recovery of $6,958.94. Appellant's points eight through thirteen and appellee's counterpoints four and five relate to appellee's recovery of $5,175.35.

Under appellant's first seven points the contentions are made that appellee was not entitled to judgment on merchandise ordered in 1964 and shipped in early 1965 because (1) the contract was terminated at the end of 1964 by oral notice given by appellant timely reiterated in writing and received by appellee who acted on it without protest, even though such notice was not given in writing by registered mail sixty days prior to termination as provided by the contract; (2) appellee was estopped to complain of want of formality of the notice, (3) appellee agreed to appellant's proposal to terminate

the contract by his words and conduct, (4) the doctrine of election, as submitted by special issues 3 and 4, has no application, (5) the evidence is legally insufficient to support the jury answers to special issues 3 and 4, (6) (7) the evidence is factually insufficient to support the jury answers to special issues 3 and 4.

We will first consider appellant's points one and three.

Paragraph 12 of the contract, omitting subdivision (c) thereof which is not material here, reads as follows:

"12. *Duration and Termination.* This agreement shall continue in effect from the effective date hereof until terminated only as follows:

(a) By mutual agreement in writing; or

(b) After a period of one year by either party at will, with or without cause, upon sixty (60) days' notice in writing given by registered mail; * * *"

Appellant's basic contention is that there was an oral modification by the parties of the prior written agreement; that the oral notice of termination given by appellant, timely reiterated twice in writing, was sufficient even though not given by registered mail, because appellee received the same and acted on it without protest. Appellant says there was a termination of the contract as a matter of law at the end of 1964, and there were no jury issues.

Appellant relies on the following testimony and evidence. In September 1963 Mr. Roy Cannon, sales manager of appellant met with appellee in Port Arthur, Texas, and discussed the contract and termination thereof. Appellant says that the conversation there established an oral modification of the contract so that it would terminate at the end of 1964; that pursuant thereto, appellant sent Mr. Bob Goddard to Texas in January 1964 as appellee's replacement to begin taking over appellee's territory; that thereafter in 1964 appellee wrote a letter in July 1964 replied to by Cannon for appellant by letter dated July 14, 1964 which letters confirmed the termination date of Dec. 31, 1964; that on October 29, 1964 Cannon wrote a letter to appellee confirming the oral agreement of September 1963 with the request that appellee sign the same and return a copy to Cannon, which appellee did not do; that, finally, on December 8, 1964, Cannon wrote appellee a letter sent by registered mail in which he terminated the contract in accordance with paragraph 12 thereof, but stated the termination date to be at the close of business December 31, 1964.

Appellee contends that appellant did not conclusively establish an oral modification of the contract so that it would terminate on December 31, 1964; that appellant did not conclusively establish that appellee accepted appellant's alleged oral modification of the written contract which would have changed the provision for termination by sixty days written notice sent by registered mail; and that appellant did not request or obtain jury findings in such respects. We agree with appellee's said contentions.

The conversation between Mr. Cannon in September 1963 was at best equivocal as to the method of terminating the contract. Cannon orally expressed the intention to terminate appellee's agency at the end of 1964 but there was no discussion concerning the termination provisions of the written agreement. In particular, nothing was said with regard to the requirement that written notice be given by registered mail for 60 days prior to the actual termination date. Appellee testified that he never agreed that such notice of termination need not be given in the manner provided by the contract. The letters written by Mr. Cannon to appellee during 1964 and appellee's letter to Cannon in July 1964, do not conclusively

establish a modification of the termination provisions of the written agreement. Mr. Cannon's letters of October 29, 1964 read as follows:

"ELECTRO-ALLOYS DIVISION
Elyria, Ohio

October 29, 1964

"Mr. B. F. Coombs

Dear Frank

I am attaching a confirmation of the verbal agreement that we made last year when we discussed your forthcoming retirement. We would appreciate your completing these papers for our records. We'll be down to see you shortly and are asking Bob Goddard to arrange a date.

/s/ Roy
Roy K. Cannon

RKC/vm
cc: Messrs. W. D. Raddatz
        H. C. Buschman, Jr."

"AMERICAN BRAKE SHOE COMPANY

ELECTRO-ALLOYS DIVISION

Taylor Street and Abbe Road, Elyria, Ohio        Telephone: Area Code 216–
                                                               FAirfax 3–3202

October 29, 1964

"B. F. Coombs Company
408 Lindberg St.
McAllen, Texas

Gentlemen:

Reference is made to our agreement with you dated June 8, 1960, which provided, among other things, for your appointment as a commission agent for the sale of certain alloy castings in Texas and Louisiana.

We propose that the above agreement be terminated as of the close of business December 31, 1964; that you will receive commissions on all sales covered by the above agreement to the extent that the products are shipped on or before the above termination date; that no commissions will be due or payable to you with respect to any sales to the extent that shipments are made after the above termination date irrespective of when the orders might be received.

"If this is satisfactory to you, please indicate your acceptance by signing the enclosed copy of this letter and returning it to the undersigned.

Yours very truly,

ELECTRO-ALLOYS DIVISION OF
AMERICAN BRAKE SHOE COMPANY
BY   /s/ Roy K. Cannon
_____

Accepted and agreed to
this _____ day of November, 1964

B. F. COOMBS COMPANY

By _____"

Appellee refused to agree to the last-mentioned written proposal made by Cannon and made a counter-proposal. Whereupon, Cannon wrote the registered letter of December 8, 1964 terminating the contract, which reads as follows:

"AMERICAN BRAKE SHOE COMPANY

ELECTRO-ALLOYS DIVISION

Taylor Street and Abbe Road, Elyria, Ohio    Telephone: Area Code 216–
FAirfax 3–3202
December 8, 1964

B. F. Coombs Company
408 Lindberg St.
McAllen, Texas

Gentlemen:

Reference is made to our agreement with you dated June 8, 1960, which provided, among other things, for your appointment as a commission agent for the sale of certain alloy castings in Texas and Louisiana.

This will confirm our notice forwarded in our letter of October 29, 1964 of our election to terminate this agreement as of the close of business December 31, 1964; in other words, we do invoke our right to terminate the above agreement in accordance with the provisions of paragraph 12.

Yours very truly,

ELECTRO-ALLOYS DIVISION OF
AMERICAN BRAKE SHOE COMPANY

/s/ Roy K. Cannon
Roy K. Cannon
Sales Manager

RKC/vm"

———◆———

Both parties cite the case of Stowers v. Harper, 376 S.W.2d 34 (Tex.Civ.App., Tyler, 1964, wr. ref. n. r. e.). That case recognizes the rule that a written agreement not required to be in writing by the Statute of Frauds can be modified by a subsequent oral agreement. However, the court also held as follows:

"* * * The determination of the existence of a modification of a contract will depend upon the intention of the parties, and therefore becomes a question of fact. San Antonio Machine & Supply Co. v. Allen, Tex.Civ.App., 268 S.W. 532. The burden of proof was on the defendant. He must prove that his proposed modification was made known to the plaintiff and that the plaintiff accepted the terms of his proposed modification." 376 S.W. 2d 39.

Here it appears that appellant failed to conclusively establish there was either an oral or written modification of the contract which would change the method of notice provided for by it. At best, there was a fact issue as to whether appellee orally agreed that the method of termination would be changed, and no issue in such respect was submitted to the jury. The rule stated in Stowers v. Harper, supra, is applicable. In the absence of a conclusive showing or a jury finding that appellee accepted appellant's proposed oral modification of the written contract, appellee was entitled

to insist upon compliance with the termination provision of it. Appellant did not give written notice of termination by registered mail until December 8, 1964. The merchandise involved in the sales made by appellee, amounting to $69,589.40 was all shipped within 60 days of that date so as to entitle appellee to commissions of $6,958.94. Error is not reflected by appellant's points one and three.

Under appellant's point two the contention is made that appellee was estopped to complain of the want of formality of the notice given by appellant. Appellant contends that its defense of estoppel was conclusively established, hence no issues were presented for jury determination.

In Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952) the court said:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' 31 C.J.S., Estoppel, § 67, page 254. Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel.' Id. § 77, page 282, et seq."

■ Appellant argues that throughout 1964 it had two men in Texas, appellee and Mr. Goddard, his ultimate replacement; that appellee introduced Goddard as such replacement; that appellee went on advisory status and virtually stopped work while accepting full commissions for the last quarter of 1964; that appellee's words and conduct could only convey to appellant his agreement to appellant's proposal to terminate the contract at the end of 1964. Appellee points out, however, that there is no evidence of any benefits which flowed to appellee other than the normal ones which he was entitled to receive under the written contract; that there is no evidence of any detrimental effect on appellant as a result of appellee's insistence upon notice of termination as provided by the written contract; that the evidence shows that appellant obtained a large volume of sales from appellee during 1964; that Mr. Cannon conceded that appellant wanted appellee to stay on to help the new man in the territory, and that appellee could open a lot of doors in the territory that probably no one in appellant's organization could open. Under the rules stated in Gulbenkian v. Penn, supra, and the evidence in this case it appears that, at best, fact issues were presented as to appellant's defense of estoppel. Since no such issues were submitted, appellant's estoppel contention is not well taken. Appellant's point two is overruled.

Under points four, five, six and seven appellant contends that the doctrine of election, as submitted by issues 3 and 4, has no application here; that the evidence is legally and factually insufficient to support the jury answers to such issues.

Special issues 3 and 4 together with the jury answers thereto read as follows:

*"SPECIAL ISSUE NO. 3:*

Do you find, from a preponderance of the evidence, that the Defendant elected to terminate the contract in question by giving 60 days notice in writing by registered mail?

Answer 'Yes' or 'No'.

We, the Jury, answer *Yes.*

If you have answered the foregoing Special Issue 'Yes', then you will answer the following Special Issue, otherwise you need not answer it.

*SPECIAL ISSUE NO. 4:*

Do you find, from a preponderance of the evidence, that the Defendant gave the 60 days notice in writing by registered mail on December 8, 1964?

Answer 'Yes' or 'No'.

We, the Jury, answer *Yes."*

■ It is undisputed that appellant gave notice of termination of the contract by its registered letter dated December 8, 1964, hereinabove copied in full. That letter followed appellant's letter of October 29, 1964 to which was attached the letter of the same date proposing that appellee agree to termination as of Dec. 31, 1964. Appellant refused to sign the same, and a subsequent telephone conversation between Mr. Cannon and appellee did not resolve the matter, but pointed up the differences of the parties. Apparently, Mr. Cannon, appellant's representative, in view of the dispute, desired to finally settle the matter and gave notice of termination by registered letter, which made specific reference to paragraph 12 of the contract and invoked appellant's rights thereunder. Under these conditions, we believe that issues 3 and 4 were properly submitted and that the jury answers thereto are supported by evidence which is legally and factually sufficient under the rules laid down by the Supreme Court in Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). Appellant's points 4, 5, 6 and 7 are overruled.

Under point number eight, appellant contends that the trial court erred in overruling its special exception to appellee's allegation in substance that he was entitled to commissions on sales to Union Carbide resulting partly from his efforts on orders placed outside appellee's territory for shipment into it.

The contract was attached to and made a part of appellee's amended petition. It provided commissions to appellee on sales to Union Carbide as follows:

"A 3% commission on sales to Union Carbide Chemicals Company, where said products have been ordered outside of said Territory pursuant to promotional activity of the Agent for shipment into said Territory."

Appellee alleged that the 1961 order of Union Carbide in the amount of $54,000.-00 was received by appellant "partly as a result of Plaintiff's promotional activities" and that the 1964 order in the amount of $118,511.59 "was at least in part as a result of Plaintiff's promotional activities in his territory."

Appellant's special exception, which was overruled by the trial court, reads as follows:

"Defendant excepts to the allegations contained in paragraph III of said petition to the effect that the two orders there described resulted in part, or partly, from the plaintiff's promotional activities and that a commission is therefore payable. The contract in suit provides for no such obligation."

■ The trial court correctly overruled said special exception. The contract did not require that orders placed by Union Carbide outside of appellee's territory for shipment into it be solely caused by the promotional activities of appellee in order for him to earn a 3% commission. The contract obviously required activity on the part of other representatives of appellant on this type of sale. Appellee's promotional activities were sufficient to earn a 3% commission if they were partly responsible for such outside orders. That type of sale is to be contrasted with the other type of sale actually made by appellee within his territory, and upon which he was entitled to a 10% commission under the contract. Appellant's point eight is overruled.

Appellant's point nine asserts that the trial court erred in submitting special issues 1 and 2 inquiring of performance by appellee in terms materially different from those alleged.

Special issues 1 and 2 together with the jury answers read as follows:

*"SPECIAL ISSUE NO. 1:*

Do you find, from a preponderance of the evidence, that the sale to Union Carbide represented by Defendant's Order No. 60–2360 was pursuant to promotional activity of the Plaintiff, B. F. Coombs?

Answer 'Yes' or 'No'.

We, the Jury, answer *Yes*.

*SPECIAL ISSUE NO. 2:*

Do you find, from a preponderance of the evidence, that the sale to Union Carbide represented by Defendant's Order No. 64–494 was pursuant to promotional activity of the Plaintiff, B. F. Coombs?

Answer 'Yes' or 'No'

We, the Jury, answer *Yes."*

■ Much of the discussion under appellant's point eight is applicable here. The two issues complained of were submitted in accordance with the wording of the contract. The essential inquiry made by the issues was proper and in accordance with the theory alleged by appellee. There was no material variance or difference between the pleadings and the issues submitted. Appellant's point nine is overruled.

By points ten and eleven appellant contends that the evidence was legally and factually insufficient to support the jury answers to special issues 1 and 2, and, particularly, that the two outside sales to Union Carbide were made pursuant to appellee's promotional activities.

Mr. Frank Cannon, sales manager of appellant's Electro-Alloys Division, testified at length concerning appellant's relationship with appellee. A portion of such testimony concerning the 3% provision of the contract is as follows:

"Q My question is, why were you only permitting him a 3% commission on Union Carbide sales ordered outside of the territory yet giving him a 5% commission on sales to all other companies in his territory which originated outside the territory—why this distinction?

A When I was interrupted, I was getting to the other area of original equipment. This is what the contract was aimed at. On the maintenance equipment, where there is no doubt that all of the sales effort is within the State of Texas, this would be a full 10%. Where a new plant or an expansion to a plant was being built, this involved sales efforts at the engineering and construction headquarters of Union Carbide located in South Charleston, West Virginia. This also involved management people of Union Carbide at their headquarters in New York City. It was necessary for us to have sales efforts at those two places, the decision making centers; the construction and engineering group in West Virginia and the general purchasing department and management people that would pass judgment on an order of that magnitude in New York. These were large installations. The purpose of the 3% was to give an incentive to Frank Coombs to try influence the purchase of this material by working with the people in Texas. If he were able to make the people in the Texas plant recommend our materials to the people in New York or South Charleston who made the decision, he would be compensated for that effort, and this would be the 3% he would get.

Q I assume your company made the decision, if there was doubt, as to

whether he was entitled to the 3% commission or not?

A Based on the contract. If he had helped us get the order, he was entitled to the 3%.

Q You had instances where your man Jordan in the East has obtained an order and you have paid Mr. Coombs a split commission with Jordan on that type of order?

A We don't pay Jordan a commission.

Q He is on a salary?

A Yes. We have had cases where Frank has shown us evidence he has promoted the sale of our product in Texas and the purchase order originated in New York, and we have paid him 3%."

Mr. Cannon's testimony was further in substance as follows: That one-third of appellant's promotion of Union Carbide was in Texas, one-third in South Charleston and one-third in New York; that appellant hoped the effort would be distributed that way when it set up the 3% arrangement; that a combined effort was contemplated; that prior to the time appellee began calling on Union Carbide (which was under a prior contract with appellant entered into in 1958 appellant sent to appellee copies of products to Texas Plants of Union Carbide; that the first shipments were in 1959; that in 1958 appellant sent to appellee copies of orders that Union Carbide had placed in other locations for appellee's use in trying to get his foot into the door with the people in Texas; that appellant's vice-president in charge of sales wrote appellee discussing such other orders and expressing the hope that they would be helpful in getting Union Carbide business in Texas; that in June 1960 appellee advised appellant that its tubing was not proving satisfactory at Union Carbide and would not be considered until it proved itself; that a meeting was arranged by representatives of appellant in about June 1960 at the Texas City plant of Union Carbide at which appellee was present along with representatives of both companies; that appellant's production manager expressed the opinion that much more work was to be done with the Union Carbide people before appellant's products would be acceptable; that appellee was appellant's only contact on a local level with Union Carbide in Texas; that appellant made a sale in the amount of $54,000.00 to Union Carbide in Texas on an order originating in New York; that shipments began on December 8, 1960; that appellee was not paid a 3% commission on this sale or on the 1964 sale to Union Carbide because he had nothing to do with them; that when appellee found out about the said 1960 order he complained about not receiving a commission; that Cannon looked into the matter and finally explained appellant's reasons for refusing to pay appellee a 3% commission, but in the same letter emphasized that a combined effort was needed both at purchasing and consuming locations. Mr. Cannon identified a number of letters written by representatives of appellant to appellee regarding the policy of purchasing departments of Union Carbide and others, about competitors, about doing educational work so that appellant would be the prime source of supply. Appellee wrote appellant a number of letters and reports concerning difficulties experienced at the Union Carbide plants in Texas, and was urged by appellant's representatives to continue his efforts so that appellant could redeem itself, and to continue a combined effort. Mr. Cannon conceded that appellee's promotional activities had resulted in getting appellant on the list of suppliers at Texas plants of Union Carbide. We hold that the evidence was legally and factually sufficient to support the jury answers to special issues 1 and 2. Garza v. Alviar, supra. Appellant's points ten and eleven are overruled.

By point twelve, appellant contends that the trial court erred in admitting correspondence and testimony relating to orders and transactions not in question in this

case. Appellant objected to such exhibits and testimony on the ground that same were not relevant to any material issue in this case. The correspondence, reports and other documents were from appellant's files and were testified to by Mr. Roy Cannon, appellant's sales manager. Mr. Cannon took the position that the two sales to Union Carbide were not pursuant to appellee's promotional activities and that he was not entitled to a 3% commission on such orders. We cannot say that the evidence complained of by appellant was wholly irrelevant to the issues presented. Some of appellant's correspondence with appellee has been referred to under our discussion of appellant's points ten and eleven. In a general way the evidence complained of by appellant tended to show appellant's attitude toward promotional activities by appellee and payment of commissions on outside orders because of such activities. Appellant's brief does not demonstrate error or harmful error in connection with point twelve, and it is overruled.

 By point thirteen appellant contends that the trial court erred in granting judgment which included a commission on the 1964 Union Carbide order because there was no evidence of the amount of same. We sustain this point. Appellee alleged the amount of said 1964 sale to be $118,511.50. He established that appellant's order number 64–494 covered this sale. However, the amount of said sale was neither testified to or shown by any instrument admitted into evidence. In connection with the 1964 sale several exhibits from appellant's files were marked for identification, but were never offered into evidence. A letter marked for identification as Defendant's Exhibit D–2d written by a representative of appellant to Union Carbide Corporation, New York City, N. Y. indicates that the total value of the 1964 shipment including freight in the amount of $1824.67 was $118,511.59, but that exhibit was never offered into evidence. Under these conditions the award of $3555.35 in commissions to appellee on the 1964 sale was improper. That

claim is severable from the remainder of appellee's recovery and may properly be the subject of separate litigation.

The judgment in favor of appellee will be reformed and affirmed so as to award appellee a recovery of $8578.94, representing $6958.94 on account of 10% commissions on sales made by appellee in 1964 on which shipments were made prior to February 8, 1965, and $1620.00 on account of 3% commission on the 1961 sale to Union Carbide. The judgment will be reversed as to appellee's award of $3555.35 on the 1964 sale to Union Carbide and such severed cause of action will be remanded for new trial.

The judgment of the trial court is reformed in part, and as so modified, affirmed; and is reversed and remanded in part in accordance with this opinion. The costs of this appeal will be assessed seventy-five percent against appellant and twenty-five percent against appellee.