**CENTURY PAPERS, INC., Appellant,**

v.

**Charles C. PERRINO, Appellee.**

**No. 8409.**

Court of Civil Appeals of Texas, Texarkana.

May 10, 1977.

Rehearing Denied June 7, 1977.

Ernest Altgelt, III, Michael S. Wilk, Hirsch, Westheimer, Block & Wilk, Houston, for appellant.

Howard G. Barker, S. G. Johndroe III, Cantey, Hanger, Gooch, Munn & Collins, Fort Worth, for appellee.

RAY, Justice.

Charles C. Perrino, appellee (plaintiff), brought suit against Century Papers, Inc., appellant (defendant), for breach of an employment contract. Perrino claimed to have been discharged without cause. Century answered that Perrino was unable to perform his duties and responsibilities, and that under such circumstances his discharge was specifically sanctioned by the contract. Trial was held before the court without the aid of a jury and judgment rendered for Perrino. Findings of fact and conclusions of law were filed by the trial court.

Century has perfected its appeal and submits five points of error for our consideration. Appellant asserts there is no evidence to support the court's fact findings related to Perrino's performance of his contractual duties, to just cause for his dismissal, or to his ability to perform his contractual duties. Century further asserts that damages were wrongly assessed when the trial court failed to properly consider Century's offer to re-employ Perrino, Perrino's probable life expectancy, and Perrino's receipt of unemployment compensation.

On January 8, 1971, Perrino sold his retail packaging company in Dallas to Century and agreed to go to work for the Houston based corporation which had been his competitor in the wholesale distribution of paper products. Century agreed to employ Perrino for ten years at a salary of $15,000.00 per year. The contract provided for termination by Century at any time for "just cause." The term "just cause" is defined to include the following:

> "(g) Inability on the part of Perrino to perform his duties and responsibilities hereunder on account of illness or other incapacity, either physical or mental, continuing for a period of more than ninety (90) days."

The contract as written neither specifies nor describes the services to be rendered by Perrino. He was required only to ". . . devote his best efforts and his entire working time to further the interest of Company . . . . ."

On January 13, 1971, the president of Century issued a memorandum to its managerial personnel describing the desired effect of the employment of Perrino and the absorption of his company. Perrino was to

become the manager of Century's Dallas Apparel Mart showroom. He was to solicit retail packaging and store display business from prospects attending the shows, make direct customer calls on accounts in the Dallas-Fort Worth area, and assist salesmen from various offices when requested to do so by distribution center managers.

Further indication of Perrino's duties and responsibilities was presented in a second memorandum to corporate personnel on October 12, 1973. The Apparel Mart showroom was to be closed when no market was being held for several stated purposes, including that of freeing Perrino for more effective outside sales assistance.

All went well until January 22, 1974, when Perrino suffered a heart attack. He was released from the hospital on February 6, 1974, but dispute remains as to the degree to which performance of his duties was impaired. From March 4 to March 15, 1974, Perrino handled routine business at the Apparel Mart. After that time his physicians advised him that his condition had deteriorated and that prolonged rest was necessary. Perrino, however, continued to appear at the Apparel Mart and attended market shows. Some discussion of the possibility of a leave of absence ensued but without finality.

Century's sales had to some extent declined with Perrino's health. The duties he had performed in preparation for the shows were no longer being performed. The corporate president became convinced that Perrino was not performing any substantial work, and on April 29, 1974, issued notice of termination.

█ By its first point of error the appellant asserts that it was justified in terminating Perrino's contract of employment because of his inability to perform his duties and responsibilities, and that findings of the trial court to the contrary are without support.

There is no dispute over the nature and extent of services rendered by Perrino after his heart attack. The services were limited. Dispute exists as to whether the performance of these services fell below what was required by the contract.

The appellant contends that Perrino was bound to perform all duties alluded to in the memoranda to corporate personnel of January 13, 1971, and October 12, 1973. It is urged that these memoranda constitute modifications of the general terms of the original contract.

The determination of the existence of a modification of the contract depends upon the intent of the parties and is therefore a question of fact. *Stowers v. Harper,* 376 S.W.2d 34, 39 (Tex.Civ.App. Tyler 1964, writ ref'd n.r.e.); 56 C.J.S. Master and Servant § 131(2). Century requested no finding and made no conclusive showing that modification of the employment contract was accepted. Perrino was therefore entitled to insist upon compliance with the termination provision of the contract as written. *American Brake Shoe Company v. Coombs,* 418 S.W.2d 841 (Tex.Civ.App. Corpus Christi 1967, writ ref'd n.r.e.).

It became the duty of the finder of fact to determine whether the employer had "just cause" to terminate under the contract. *Ward v. Consolidated Foods Corporation,* 480 S.W.2d 483, 486 (Tex.Civ.App. Waco 1972, writ ref'd n.r.e.). The trial court's finding of fact that the contract was not terminated for just cause is supported by the evidence. There is, indeed, no evidence of anything Perrino failed to do which would constitute a breach of any duty owed under the contract. *Zuider Zee Oyster Bar, Inc. v. Martin,* 503 S.W.2d 292, 293 (Tex.Civ.App. Fort Worth 1973, writ ref'd n.r.e.). The appellant's first point of error is overruled.

Appellant's second point of error is as follows:

"Perrino failed to prove by a preponderance of the evidence that he was able to perform his contractual duties and the trial court's finding of fact that Perrino was able to perform is supported by no evidence."

The evidence of the state of Perrino's health is conflicting. However, in light of the general description of the obligations

under the contract, the trial court's finding that Perrino was ready and able to perform cannot be said to be in error as a matter of law. Point of error No. II is overruled.

Appellant states in its third point of error that no recovery can be had against it because it offered to reinstate Perrino. This offer was supposedly contained in the notice of dismissal. In being notified that his contract was being terminated, Perrino was advised that if he desired to return to work after he had been operated upon, if his health permitted, and if his doctors and Century's doctors approved, the matter would be discussed.

The appellant cites *Texas Benev. Assoc. v. Bell*, 3 Willson, Civ.Cas.Ct.App. § 277, P. 335 (1887), in which it was held that when a discharged employee is offered the same or like employment as that from which he has been discharged, for the same period and upon the same terms, and before he has sustained any injury by reason of the discharge, no damages can be recovered. 72 A.L.R. 1049, 1054; see also 38 Tex.Jur.2d, Master and Servant, Sec. 23, Note 10.

In the instant case, the terms and conditions of re-employment were uncertain from the offer of Century. The offer was at best a tenuous and offhand reference to future possibilities included in the termination notice to soften the blow of the dismissal. It did not reflect an unconditional offer of re-employment upon the fulfilling of specific conditions precedent. The trial court's finding that appellant's breach of the employment agreement was absolute and at no time did appellant offer to reinstate said employment agreement is supported by some evidence and was a fact question to be determined by the trier of facts. Whether or not Century offered to reinstate the employment agreement was a defensive matter upon which appellant had the burden of proof and the burden of persuasion. We cannot say as a matter of law that appellant offered to reinstate the employment agreement and therefore appellant's point of error No. III is overruled.

Appellant's fourth point of error asserts that the trial court erred in arbitrarily disregarding undisputed evidence of Perrino's life expectancy in assessing future damages. The trial court found that appellant was not entitled to any discount of sums due and owing to Perrino by reason of the asserted lessened life expectancy. The expert opinion testimony concerning appellee's life expectancy was undisputed but not unequivocal. A physician specialized in cardiovascular disease stated that Perrino's life expectancy would be difficult to calculate, but that the average yearly mortality rate for persons with his condition was about ten to twelve percent for about five years, declining after that.

The trial court was not bound to apply the expert's opinion to calculate appellee's life expectancy. It is well settled that the opinion testimony of experts, even when uncontroverted, is not conclusive and binding on the finder of facts. *Coxson v. Atlanta Life Ins. Co.*, 142 Tex. 544, 179 S.W.2d 943, 945 (1944); *Broussard v. Moon*, 431 S.W.2d 534, 537 (Tex.Sup.1968).

The trial court's decision to disregard as inconclusive the expert testimony of the probabilities of Perrino's life expectancy cannot be said to be in error. Appellant's fourth point of error is overruled.

Appellant's fifth point of error complains of the trial court's failure to deduct from damages awarded the amounts received and to be received as unemployment compensation. No Texas case has been cited or discovered which directly weighs such compensation in an award of damages for breach of an employment contract.

The general rule in assessing damages for breach of contract is that the employer is entitled to a set-off for any amounts the employee could or should through the exercise of due diligence earn through other employment. *Dixie Glass Co. v. Pollak*, 341 S.W.2d 530, 538 (Tex.Civ.App. Houston 1960, writ ref'd n.r.e.); *Galveston County v. Ducie*, 91 Tex. 665, 45 S.W. 798, 800 (1898). These cases and the general rule are distinguishable in the instant case if unemployment compensation is not viewed as earned income. Compensation for a loss received

by a plaintiff from a collateral source cannot generally be considered in litigation of damages for personal injury. *Kainer v. Walker*, 377 S.W.2d 613 (Tex.Sup.1964); 25 C.J.S. Damages § 99(1). Courts in other jurisdictions have applied the collateral source doctrine to the receipt of unemployment compensation by one bringing suit for breach of a contract of employment. 22 Am.Jur.2d, Damages, Sec. 209; *Burens v. Wolfe Wear-U-Well Corporation*, 236 Mo. App. 892, 158 S.W.2d 175 (1942); *Bang v. International Sisal Co.*, 212 Minn. 135, 4 N.W.2d 113 (1942); *Billetter v. Posell*, 94 Cal.App.2d 858, 211 P.2d 621 (1949). There is no sound reason in the law or in policy for this Court to hold to the contrary. The benefits received from unemployment compensation were intended to alleviate the distress of unemployment, not to diminish the amount which an employer must pay as damages in making whole a wrongfully discharged employee. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.