Kay ALLEN, et al., and James White,
et al., Appellants,

v.

**LUMBERTON INDEPENDENT
SCHOOL DISTRICT,**
Appellees.

No. 09–87–063 CV.

Court of Appeals of Texas,
Beaumont.

Feb. 18, 1988.

Rehearing Denied March 9, 1988.

Truman W. Dean, Jr., Waterman, Dean, Groth & Moore, P.C., Houston, Jefferson K. Brim, III, Brim & Arnett, Austin, for appellants.

Robert J. Hambright, Orgain, Bell & Tucker, Beaumont, Kenneth D. Furlow, Beaumont, for appellees.

OPINION

DIES, Chief Justice.

In September, 1985, the Trustees of the Lumberton Independent School District (Hardin County) determined to change many salaries of employees of that district. Teachers began their 1985–86 school year on August 26, 1985, but they had been asked to sign contracts in April of 1985. Some of these teachers, joined by others as Intervenors, filed suit to enjoin the School District from enacting its proposed tax rate because the rate would not finance the 1984–85 salary schedule. The pleadings of all parties were amended, and later, the Plaintiffs (teachers, employees, administrators) and the School District all filed motions for summary judgment. The court granted a summary judgment to the School District from which the Plaintiffs have perfected this appeal. The parties herein will be referred to as Appellants and Appellees or by title or office held.

All parties agree that the dispute involves only questions of law, not fact.

Appellants' points of error contend:

1. They (as employees holding contracts under the provisions of Chapter 13 of the Texas Education Code) had a tenure right to be paid what each had been paid during the previous (1984–85) school year under the same contract.

2. Appellants had a right under the common law of contracts, once they began to perform duties in the 1985–86 school year, to receive no less than the rate of pay they had received the previous school year (1984–85).

3. The trial court erred in failing to award attorney's fees to the Appellants because the performance of a contract is a proprietary function of a school district, thereby subjecting it to the same liability as a private employer.

Appellants admit changes were expected to be made by the Board of Trustees in 1985–86 because the State decreased its share of payment. Obviously this decrease in support by the State necessitated either a raise in local taxes, a reduction in expenditures, or a combination of both. The Lumberton Board chose to reduce expenditures.

In Texas, "[t]he trustees shall have the exclusive power to manage and govern the public free schools of the district." *TEX. EDUC.CODE ANN. sec. 23.26(b)* (Vernon 1987), hereafter sometimes referred to as "the Code."

A school district, under the provisions of Chapter 13, Subchapter C of the Code, may employ certain personnel under probationary contracts and certain personnel under continuing contracts. This system has been thus described:

"Continuing contract districts employ teachers under sections 13.101 to 13.116 of the Texas Education Code. Enacted in 1967, this statute provides a formalized tenure system for a district choosing to have probationary and continuing contracts. A teacher, under this statute, serves a probationary period of not more than four years before obtaining continuing contract status. When continuing contract status is achieved, the employment relationship continues automatically without the necessity of nomination and school board approval. Thereafter, the employment relationship is severed only if the teacher resigns, retires, or the district affirmatively initiates the teacher's termination, nonrenewal, or return to probationary status."

Armstrong & Hollan, *Teacher Termination and Nonrenewal in Texas Public Schools,* 16 ST. MARY'S L.J. 783, 786 (1985) (footnotes omitted).

*Section 13.107* of the Code provides, in part:

"Each teacher with whom a continuing contract has been made as herein provided shall be entitled to continue in his position or a position with the school district, at a salary authorized by the board of trustees of said district complying with the minimum salary provisions of the foundation aid law...."

*Section 16.055(a)* of the Code reads:

"A school district must pay each employee who is qualified for and employed in a position classified under the Texas Public Education Compensation Plan set forth in Section 16.056 of this chapter not less than the minimum monthly base salary, plus increments for teaching experience, specified for the position."

*Section 16.056(a)* of the Code reads:

"School district personnel who are qualified for and employed in positions described in Subsection (d) of this section [including, among others, teachers and librarians] shall be paid not less than the monthly base salary, plus increments for teaching experience, set forth in Subsection (c) of this section, or greater amounts provided by appropriation."

The minimum base salary and those increments for teaching experience are enacted by the legislature and set out in subsection (c) of section 16.056. No district in Texas may pay less than the salary the legislature enacts, but a district may, as a local supplement, pay a greater amount than the minimum, and many do. So we see that Texas really has no tenure law as some states do.[1] And, if we are to have the extension the Appellants urge, we feel it must be done by the legislature, not by the courts. Appellants were notified when they received them that the 1984–85 increments were for one year only. We find nothing in the Code which would justify

1. *See Settle v. Camic,* 552 S.W.2d 693 (Ky.Ct. App.1977).

our automatically extending these supplemental payments to the following school year.

Appellants cite us *James v. Hitchcock Indep. School Dist.*, 742 S.W.2d 701 (Tex. App.—Houston [1st Dist.] 1987, no writ). There, in 1979, the appellant and the district entered into a ten-month (203–day) continuing contract, governed by Sections 16.051–16.056 of the Code, which required that the district contract with appellant for a minimum of 183 days. In the 1979 continuing contract, 20 days were added to that minimum by the local board and were funded by local supplement. On March 4, 1981, the district informed appellant that beginning with the 1981–82 school year, the district would begin to reduce appellant's locally funded days on a downward scale to absorb her state-mandated increases until the district's contribution eventually became a constant $1,400 annual payment.

In holding appellant was entitled to receive the 20 days provided by the local supplement, the court wrote:

"To hold otherwise would seriously undermine economic security for public school teachers—a goal of the continuing contract law."

*Id.* While this may be a statement with basis, we find nothing in the Texas Education Code to justify it, and we believe Appellants must take their case to the Texas Legislature. The first point of error is overruled.

■ All of the Appellants in this lawsuit, except for perhaps two, were under continuing contracts. The only "Supplement To Continuing Contract Agreement" we find in our transcript is attached to Exhibit "B" of some of the Appellants' original petition. We hereafter set it out:

"LUMBERTON INDEPENDENT SCHOOL DISTRICT

STATE OF TEXAS    *
COUNTY OF HARDIN   *

SUPPLEMENT TO CONTINUING
CONTRACT AGREEMENT

You are notified your salary of the school year 1985-1986 beginning on the 26th day of August, 1985, will be The State of Texas Minimum Foundation Salary plus local increment.

SIGNED this 26th day of March, 1985.
LUMBERTON INDEPENDENT
SCHOOL DISTRICT
Board of Trustees

_____
[signed]
President

_____
[signed]
Secretary

NOTE: Teacher must sign this agreement within 30 days from the above date and file same with the Board of Trustees at the Superintendent's office. * * * * * * *
Failure of the Teacher to accept this agreement within 30 days shall be considered a refusal on the part of the Teacher to accept the continuing contract status.

SIGNED and ACCEPTED this 16 day of April, 1985.

_____
[signed by one of the Appellants]
Teacher"

We must read this contract in accordance with its plain language and not revise it while professing to construe it. *Gen. Am. Indem. Co. v. Pepper*, 161 Tex. 263, 265, 339 S.W.2d 660, 661 (1960). It is not a question of rejecting a liberal construction; there simply is no provision for what the 1985–86 local supplement is to be. *See Marlin Assocs. v. Trinity Universal Ins. Co.*, 226 S.W.2d 190, 194 (Tex.Civ.App.— Dallas 1949, no writ); 14 TEX.JUR.3d *Contracts* sec. 186, at 313–14 (1981). The fact that Appellants did receive, generally, higher increments in the year (or years) preceding does not constitute an implied or de facto agreement by the School District to continue the higher increments. *Hix v. Tuloso–Midway Indep. School Dist.*, 489 S.W.2d 706 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.); The second point of error is overruled.

This makes it unnecessary to address the third point of error (attorney's fees) and it is thus overruled.

The judgment of the trial court is affirmed.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority effectively places every teacher in this state on the horns of a dilemma. *TEX.EDUC. CODE ANN. sec. 13.101* (Vernon 1972) requires that every teacher be employed under a written contract. *TEX.EDUC.CODE ANN. sec. 13.106* (Vernon 1972) requires a

teacher to accept the continuing contract within 30 days of its offer or it shall be considered a refusal. Thus, as in this case, when the school district offers a continuing contract in March to begin in August and states only that the salary will be the State of Texas Minimum Foundation Salary plus local increment, without specifying that local increment, the teacher must sign a contract with an important provision, in effect, left blank. The majority would make the teacher bear this uncertainty. The system is better served by avoiding such an uncertainty. If a school district is indeed unable to predict what the local supplement will be at the start of the school year, it can set the salaries at the state minimum, without a supplement, and let its teachers look for more favorable economic conditions. It should do so by August 1 at the very least. Under *TEX.EDUC.CODE ANN. sec. 13.116* (Vernon 1976), a teacher may only leave the employment of the district without penalty before August 1st. If the teacher fails to resign before that period, then a subsequent resignation results in a year's suspension of the teacher's certificate.

We must presume that the school district knew of all these various requirements that statutorily bound its teachers. Because the district did nothing regarding a new salary schedule prior to August 1 or prior to the day the teachers began working, the common law of contract there was no no contract because there was no agreed upon consideration. Because the legislature has required that a contract be in force and adopted very stringent penalties, it is only logical to infer that the new contract would embody the provisions of the previous contract. To hold otherwise would require a finding of no contract and this cannot be under the code.

I would therefore hold that the teachers were entitled to the previous year's salary schedule and would remand the case to the trial court for the determination of damages and attorney's fees. Since the majority holds otherwise, I respectfully dissent.