TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00435-CV






Weslaco Federation of Teachers, Appellant



v.



Texas Education Agency; Commissioner of Education Jim Nelson; and Weslaco
Independent School District, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 98-07619, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 







 This case involves a salary dispute between Appellee Weslaco Independent School
District (the "District") and the Weslaco Federation of Teachers (the "Federation"). After the
District denied its grievance regarding compensation, the Federation appealed to the
Commissioner of Education (the "Commissioner"), (1) who found in favor of the District. The
Federation then brought this suit in district court, seeking judicial review of the Commissioner's
decision. The district court upheld the Commissioner, and the Federation appeals. We will
affirm the district court's judgment.

BACKGROUND

 Since at least the 1987-88 school year, the District has paid its teachers a local
supplement (2) in addition to the state-mandated minimum salary. (3) In notifying teachers of their
salaries for an upcoming school year, the District has in the past separated a teacher's total salary
into those two components: the state-mandated minimum and the local supplement.

 In the 1987-88 school year, the District's local supplement was $3800. The next
year, the District raised the local supplement to $4000, where it remained until 1992-93. That
year the District raised the supplement to $5000, where it remained until the 1995-96 school year,
when the District reduced the supplement. This reduction forms the controversy now before this
Court.

 The District employs its teachers through written contracts that provide for a one-year term of service. Generally, teachers at the District sign their contracts in April or May
before the start of the school year in late August. A teacher who wishes to resign must do so at
least 45 days before the start of the school year. See Tex. Educ. Code Ann. §§ 21.105(a),
.160(a), .210(a) (West 1996). Once this date passes, a teacher becomes bound to the contract and
must remain with the District for the upcoming school year. See id. §§ 21.105(c), .160(c),
.210(c) (West 1996). For the 1995-96 school year, the deadline for unilateral resignation was July
3, 1995. (4)

 Each year, the District sets teachers' salaries when it adopts the budget for that
school year. In 1995-96, the District did not adopt a budget until August 28, 1995, after the
school year started and the deadline for unilateral resignation had passed. Thus, teachers' salaries
for 1995-96 were not established until August 28, after the District's teachers had become
contractually bound to the District for that school year. 

 The Seventy-Fourth Legislature raised the state minimum salary for teachers
effective with the 1995-96 school year. See Act of May 27, 1995, 74th Leg., R.S., ch. 260, sec.
1, § 21.4011, 1995 Tex. Gen. Laws 2207, 2278-79 ("Senate Bill 1") (Tex. Educ. Code Ann.
§ 21.402, since amended). Senate Bill 1 did not prohibit a district from reducing the amount of
its local supplement. Compare id., with Act of May 30, 1999, 76th Leg., R.S., ch. 369, § 1.30,
1999 Tex. Gen. Laws 2471, 2482 (Tex. Educ. Code Ann. § 21.402(c-1) (West Supp. 2000))
(school district must pay teachers greater of new state minimum or previous year's salary,
including supplement, plus $300 per month). By the end of June 1995, the District's assistant
superintendent for administration had prepared four budgets for the District's consideration and
presented them to the District's board of trustees. Only one of the proposed budgets retained the
previous $5000 local supplement. During the summer of 1995 while evaluating several budgets
that had varying effects on the local supplement, the District gave the teachers no notice that it
was considering lowering the local supplement. 

 Shortly before the teachers received their September paychecks, the District finally
notified them of their new salaries. The District did not divide the salary into the traditional two
components of state minimum and local supplement, as it had in the past. However, by
comparing their actual salaries with the state minimum, the teachers realized that they were not
being paid the previous $5000 supplement. For the first time since the 1987-88 school year, the
supplement varied from teacher to teacher based on the extent of teaching experience, and every
teacher's local supplement was less than $5000. However, despite the reduction in local
supplement, due to the increased state minimum requirement, all teachers' salaries were higher
than that of the previous year. Several teachers testified that they expected to receive the previous
local supplement of $5000 in addition to the new state-mandated minimum salary. It is undisputed
that the District had used the existence of a $5000 local supplement to recruit teachers for the
1995-96 school year but in fact paid its teachers a lower amount.

 The Federation filed a grievance on behalf of numerous members aggrieved by the
District's action. The District's superintendent denied the grievance. The Federation
unsuccessfully appealed to the District's board of trustees. The Federation then appealed to the
Commissioner. The Commissioner found that although a school district cannot reduce a teacher's
total salary after the teacher can no longer unilaterally withdraw from her contract, a school
district may set a salary schedule that reduces elements of that salary so long as the teacher's total
compensation is not reduced. The Federation sought judicial review in the district court, who
affirmed the Commissioner's decision. The Federation now appeals, arguing that (1) as a matter
of law, the teachers' contracts require the District to pay according to the salary schedule adopted
before performance began, i.e., the $5000 local supplement effective in 1994-95 plus the new
state minimum; (2) as a matter of law, the District cannot reduce or eliminate the local supplement
after the teachers become bound to their contracts; and (3) estoppel prevents the District from
reducing the $5000 local supplement.


DISCUSSION

I. Terms of the Contracts

 By its first two issues, the Federation argues that as a matter of law, the terms in
the teachers' contracts required the District to pay a salary according to the salary schedule
adopted before performance begins. According to the Federation, performance began on either
July 3 (the day the teachers became bound) or August 14 (the day school began), and the salary
schedule in place at that time was the 1994-95 salary schedule, which obligated the District to pay
a $5000 local supplement. The Federation asserts that the 1994-95 method of compensation was
incorporated into the 1995-96 contracts and that the District could not reduce or eliminate the local
supplement after the teachers became bound to their contracts. The Federation argues that
contracts require mutuality and cannot be subsequently modified after teachers become bound and
that the past practice of paying a $5000 local supplement in addition to the state-mandated
minimum salary strengthens its contention that the $5000 local supplement is part of the 1995-96
contracts. The Federation further reasons that because the contracts themselves require the
District to pay its teachers the $5000 local supplement, the Commissioner acted arbitrarily and
capriciously in basing his decision on general policy rather than the teachers' contracts.


A. Waiver

 The District first responds by arguing that the Federation has waived both its issues
by raising them for the first time on appeal and by making various judicial admissions. Generally,
to preserve error in an administrative appeal, a party must file with the agency a motion for
rehearing that sufficiently identifies the claimed error. See Yamaha Motor Corp. v. Motor Vehicle 
Div., Tex. Dep't of Transp., 860 S.W.2d 223, 229 (Tex. App.--Austin 1993, writ denied). In its
motion for rehearing, the Federation argued that "the Commissioner's decision arbitrarily nullifies
and ignores the language of [the District's] contracts, requiring the [D]istrict to pay 'an annual
salary according to the salary schedule to be adopted by the Board before the performance of this
Contract begins.'" We hold that the Federation's motion for rehearing is sufficient to preserve
its first two issues for this Court's review.

 The District further argues that the Federation waived these issues by making
several judicial admissions. The District directs us to the Federation's attorney's opening
statement to the Commissioner:


Now, although teachers were told when they were hired by [the District] that the
supplement had been there for a long time . . ., we agree it's not written anywhere
that the supplement is permanently irrevocable, but that's not what this case is
about.


 . . . .


 But when [the District] decided in June to decrease the local supplement and
not pass on Senate Bill 1's full-state increase to teachers, even though the district
was fully aware that the teachers were relying on this and they had a reasonable
expectation, what did the [D]istrict do to give teachers proper notice of this
material change in their contract? Nothing. And that is what this case is about.


 . . . .


 This case clearly falls within the Texas Supreme Court's Bowman versus
Lumberton case [a case based solely on an estoppel theory]. The Teachers must
win under contract and estoppel principles . . . .



 To qualify as a judicial admission, a statement must be (1) made in the course of
a judicial proceeding; (2) contrary to an essential fact for the party's recovery; (3) deliberate, clear
and unequivocal; (4) related to a fact upon which judgment for the opposing party could be based;
and (5) enforcing the admission would be consistent with public policy. See United States Fidelity
& Guar. Co. v. Carr, 242 S.W.2d 224, 229 (Tex. Civ. App.--San Antonio 1951, writ ref'd);
Roberts v. Burkett, 802 S.W.2d 42, 44 (Tex. App.--Corpus Christi 1990, no writ). A true judicial
admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. 
See Mendoza v. Fidelity and Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980);
Frazer v. Texas Farm Bureau Mut. Ins. Co., 4 S.W.3d 819, 825 (Tex. App.--Houston [1st Dist.]
1999, no pet.). 

 The attorney's opening argument, which is not evidence in the case, constitutes no
more than a forceful and persuasive summary of the Federation's case. The Federation does not
argue that the contracts state that the supplement is "permanently irrevocable." These general
statements delineating what "this case is about" are not deliberate, clear, and unequivocal
statements. We further note that these statements are unsworn. "The policy underlying judicial
admissions is to prevent a party from recovering after he has sworn himself out of court." 
Roberts, 802 S.W.2d at 45 (citing Carr, 242 S.W.2d at 229). Judicial admissions are a formal
act, and the doctrine should be applied with caution. See id. We hold that the statements made
by the Federation's attorney do not constitute judicial admissions. We will consider the
Federation's initial two issues.


B. Interpretation of the Contracts

 The Federation urges this Court to determine the meaning of the teachers' contracts
de novo as a matter of law, but the District argues that we should employ a substantial evidence
review. We agree with the Federation. An administrative determination of a question of law,
unlike a determination of a disputed fact, is not entitled to a presumption of validity. See Teacher
Retirement Sys. v. Cottrell, 583 S.W.2d 928, 930 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.). 
The interpretation of an unambiguous contract is purely a question of law. See Columbia Gas
Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d. 587, 589 (Tex. 1996) (determining
whether contract is ambiguous is question of law); Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983) (if contract is unambiguous, court will construe contract as question of law). Therefore,
an agency's interpretation of an unambiguous contract is not binding on a district or appellate
court.

 When construing a written contract, we "ascertain the intent of the parties as
expressed in the instrument." National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517,
520 (Tex. 1995). In deciding whether a contract is ambiguous, we consider the written instrument
as a whole and determine if it is subject to more than one reasonable interpretation in light of the
circumstances present at the time of its formation. See Grain Dealers Mut. Ins. Co. v. McKee,
943 S.W.2d 455, 458 (Tex. 1997). If the contract can be given a certain or definite legal
meaning, then it is not ambiguous and should be construed as a matter of law. See id.; National
Union, 907 S.W.2d at 520. An ambiguity does not arise simply because the parties advance
different interpretations of the contract's language. See Grain Dealers, 943 S.W.2d at 458.

 The District employs teachers under three types of contracts: a one-year term
contract ("term contract"), (5) a one-year probationary contract ("probationary contract"), (6) and a
continuing contract of employment ("continuing contract"). (7) The term contract and probationary
contract have the same provision regarding salary:


 The Board shall pay the Employee an annual salary according to the salary
schedule to be adopted by the Board before the performance of this Contract
begins, but in no event less than the state minimum salary.


 The continuing contract provides:



 The Board shall pay the Employee an annual salary according to the salary
schedule adopted by the Board, but in no event less than the state minimum salary.


 The Federation argues that the contracts incorporate the terms of the salary
schedule in existence at the time the teachers became bound by the contracts. (8) At the time the
teachers became bound to their contract, whether that date is July 3 or August 14, the only salary
schedule in existence was the one for the school year 1994-95, which required the District to pay
a $5000 local supplement in addition to the state minimum salary. Furthermore, because the
$5000 local supplement is a material term of the contract, it cannot be altered once the teachers
became bound to their contracts. See Central Educ. Agency v. George West ISD, 783 S.W.2d
200, 202 (Tex. 1989) (school district cannot unilaterally abrogate material part of teacher's
contract without committing breach).

 The Federation is correct that an unsigned paper may be incorporated into a
contract signed by the person to be charged. See MTrust Corp. N.A. v. LJH Corp., 837 S.W.2d
250, 253-54 (Tex. App.--Fort Worth 1992, writ denied). However, the Federation's argument
fails because the 1994-95 salary schedule was not incorporated into the 1995-96 contracts. The
contracts clearly state that the District will pay its teachers an annual salary based on a salary
schedule, which will be adopted by the District before performance of the contract begins. For
the 1995-96 school year, the District failed to adopt a salary schedule before the teachers began
performing their contracts. According to the contracts, when the District fails to timely adopt a
salary schedule, the default position is that teachers will receive no less than the state minimum
salary; the default is not the previous year's salary schedule. (9) 

 The Federation argues that this case is similar to International Motorists Ass'n v.
Aguilar, 402 S.W.2d 516 (Tex. Civ. App.--Austin 1966, writ dism'd w.o.j.), and Stowers v.
Harper, 376 S.W.2d 34 (Tex. Civ. App.--Tyler 1964, writ ref'd n.r.e.). In Aguilar, this Court
noted, "We have no doubt that a simple agreement to renew . . . an identified contract, where no
new terms are added, is sufficient to incorporate the provisions of the old . . . contract into a new
agreement on the same terms as the former agreement." 402 S.W.2d at 519-20. Here, however,
the teachers did not simply renew their previous contracts; they signed entirely different contracts. 
The 1995-96 contracts did not incorporate the 1994-95 salary schedule; in fact, the contracts
contemplated that a new salary schedule would be adopted by the District for the 1995-96 school
year. 

 Stowers can be distinguished on similar grounds. In Stowers, a sales associate and
his employer entered into an employment contract that stated "for each and every full calendar
year during the continued performance thereof[,]" the sales associate will be compensated in a
certain manner. See Stowers, 376 S.W.2d at 36. The employer changed the method of
compensation without notifying the sales associate. See id. at 39. The appellate court, in
affirming the trial verdict for the employee, stated that as a matter of law there was no
modification of the contract because the employer never notified the employee of the change. See
id. Thus, the original contract governed their relationship, and the employee had to be
compensated under the original method. See id. Here, the wording of the contract is different. 
The Stowers contract implied on-going terms of employment--"for each and every full calendar
year." The teachers' contracts, however, are clearly limited to one year and state that the teacher
"shall be employed on a 183 day basis for school year 1995-96." The District never modified the
1995-96 contract because the 1994-95 salary schedule and the compensation method employed
thereunder were never incorporated into that contract.

 We hold as a matter of law that the teachers' contracts do not require the District
to pay its teachers a $5000 local supplement. Cf. Allen v. Lumberton ISD, 746 S.W.2d 524, 526
(Tex. App.--Beaumont 1988) (holding that teacher contract did not guarantee teachers certain local
supplement), rev'd on other grounds sub nom. Bowman v. Lumberton ISD, 801 S.W.2d 883 (Tex.
1990). Because we so hold, we do not reach the Federation's argument that the Commissioner
acted arbitrarily and capriciously in rendering a policy decision in this case as opposed to
determining what teachers were due under their contracts. (10) We overrule the Federation's first
and second issues.


II. Estoppel

 By its third issue, the Federation argues that the District is estopped from
eliminating the $5000 local supplement and that the Commissioner's decision to the contrary was
against the substantial weight of the evidence. Specifically, the Federation argues that the
Commissioner's finding that the District did not conceal from the teachers their salaries for the
1995-96 school year was not supported by the substantial weight of the evidence.

 Agency decisions that are not supported by substantial evidence are deemed
arbitrary and capricious. See Public Util. Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201,
211 (Tex. 1991). In conducting a substantial-evidence review, we must first determine whether
the evidence as a whole is such that reasonable minds could have reached the conclusion the
agency must have reached in order to take the disputed action. See Texas State Bd. of Dental
Exam'rs v. Sizemore, 759 S.W.2d 114, 116 (Tex. 1988); Texas Health Facilities Comm'n v.
Charter Med.-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984). We may not substitute our
judgment for that of the agency and may consider only the record on which the agency based its
decision. See Sizemore, 759 S.W.2d at 116. Furthermore, the reviewing court is prohibited from
substituting its judgment as to the weight of the evidence on questions committed to agency
discretion. See Charter Med.-Dallas, 665 S.W.2d at 452.

 The agency's findings, inferences, and conclusions are presumed to be supported
by substantial evidence, and the appealing party bears the burden of showing a lack of substantial
evidence. See id. at 453. The appealing party cannot meet this burden merely by showing that
the evidence preponderates against the decision. See id. If substantial evidence would support
either affirmative or negative findings, the reviewing court must uphold the order, resolving any
conflicts in favor of the agency's decision. See id. "The true test is not whether the agency
reached the correct conclusion, but whether some reasonable basis exists in the record for the
action taken by the agency." Id. at 452. The reviewing court should sustain the decision if it
determines that reasonable minds could have reached the same conclusion the agency reached. 
See Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d 358, 364 (Tex. 1983).

 Here, the District's assistant superintendent for administration testified that he and
his department were responsible for preparing the budget for the District, including setting the
teachers' salaries. By the end of June, the assistant superintendent had prepared four budgets for
the District to choose from and presented them all to the District's board of trustees; one of the
budget proposals included a $5000 local supplement but was not adopted. The District did not
adopt a salary schedule for the 1995-96 school year until August 28. Although the District may
not have publicized the fact that it was considering a reduction of the local supplement, it could
not conceal teachers' salaries before that date because the salary schedule was not adopted until
then. During early September, the District held meetings with teachers at various school
campuses to explain the new salary schedule. We hold that there was substantial evidence in the
record from which the Commissioner could determine that the District did not conceal from the
teachers their salaries for the 1995-96 school year.

 We next consider the question of promissory estoppel. The requisites of
promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and
(3) substantial reliance by the promisee to his detriment. See English v. Fischer, 660 S.W.2d 521,
524 (Tex. 1983). The Federation argues that an injustice occurred because teachers expected to
be paid the state minimum salary plus the $5000 local supplement for the 1995-96 school year
when they signed their contracts and by the time they found out that they would not be paid the
full $5000 local supplement, it was too late for them to seek a job with another district that paid
such a supplement. 

 In his decision the Commissioner stated, "Some teachers guessed that their new
salaries would be the state minimum plus a supplement of $5,000. This was mere guess. Other
reasonable guesses could be made because districts are not required to continue the same
supplement." We suspect that the teachers' actions amounted to more than mere guesswork. The
District's delay put its teachers in the position of committing themselves to binding contracts
without informing them what they would be paid. They commenced the school year still
uncertain. They knew that the legislature has increased the state minimum salary; they knew that
the District had paid a local supplement for eight years; they knew the supplement had never been
reduced; they knew the supplement had been $5000 for the last three years; they knew they could
not be paid less than their total salary from the prior year; and they knew the District had
recruited teachers for 1995-96 on the basis it paid a $5000 supplement. Nevertheless, although
understandably unfair on the surface, we must hold that the contracts themselves did not promise
a $5000 local supplement, nor did the District's past actions bind them to pay a $5000
supplement. The Federation points to no other act that they contend constitutes a promise to pay
a $5000 local supplement. We hold that there is a reasonable basis in the record for the
Commissioner's conclusion. (11) We overrule the Federation's third issue.


CONCLUSION

 Having overruled all of the Federation's issues, we affirm the district court's
judgment.



 


 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Jones and Yeakel

Affirmed

Filed: August 31, 2000

Publish
1. This appeal was originally filed in the name of the predecessor to the present Commissioner
of Education. We have substituted the current holder of that office as the correct party to this
proceeding. See Tex. R. App. P. 7.2(a). Appellees the Texas Education Agency and the
Commissioner of Education jointly filed a separate brief. Because their arguments and interests
do not diverge from those of the District, we will not refer to these appellees individually unless
necessary for clarity.
2. A local supplement is an additional amount of compensation, beyond the state-mandated
minimum salary, that a local school district may pay to teachers using local money. School
districts often use a local supplement to attract, recruit, and retain teachers.
3. The legislature mandates a minimum salary that a school district must pay a teacher. See,
e.g., Act of May 27, 1995, 74th Leg., R.S., ch. 260, sec. 1, § 21.4011, 1995 Tex. Gen. Laws
2207, 2278-79.
4. A teacher may resign after the deadline but must have permission of the district's board of
trustees to do so. See Tex. Educ. Code Ann. §§ 21.105(b), .160(b), .210(b) (West 1996).
5. See Tex. Educ. Code Ann. §§ 21.201-.213 (West 1996).
6. See id. §§ 21.101-.106 (West 1996).
7. See id. §§ 21.151-.160 (West 1996).
8. The Federation acknowledges that the contract provision in the continuing contract is
slightly different from the provision in the term and probationary contracts but does not
differentiate its argument by type of contract.
9. The continuing contract is not as explicit and simply refers to a "salary schedule adopted
by the Board." However, the same analysis applies--if the District failed to adopt a salary schedule
in connection with the 1995-96 contract, the default position is the state-minimum salary, not the
previous salary schedule.


 In his decision, the Commissioner noted an additional limitation on the District, beyond the
default in the contract: "The Commissioner has repeatedly held that a district may not reduce a
teacher's total salary after the teacher can no longer unilaterally withdraw from his contract. . . .
It cannot be the law that teachers can find out that their pay has been cut by thousands of dollars
after they cannot withdraw from their contracts."
10. The Federation also argues that the teachers are entitled to the $5000 local supplement
based on the past practice of the District in paying a $5000 local supplement. However, the fact
that teachers received this local supplement in the years preceding does not constitute an implied
or de facto agreement by the District to continue the $5000 local supplement. See Allen v.
Lumberton ISD, 746 S.W.2d 524, 526 (Tex. App.--Beaumont 1988), rev'd on other grounds sub
nom. Bowman v. Lumberton ISD, 801 S.W.2d 883 (Tex. 1990).
11. We note that the legislature addressed this situation when it next increased the state salary
minimum by prohibiting a District from reducing the local supplement. See Tex. Educ. Code
Ann. § 21.402(c-1) (West Supp. 2000). That action at least suggests that the District could do
so up to that time, including the 1995-96 school year.



 The Federation points to no other act that they contend constitutes a promise to pay
a $5000 local supplement. We hold that there is a reasonable basis in the record for the
Commissioner's conclusion. (11) We overrule the Federation's third issue.


CONCLUSION

 Having overruled all of the Federation's issues, we affirm the district court's
judgment.



 


 Lee Yeakel, Justice

Before Chief J