TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-09-00641-CV




North East Independent School District, Appellant

v.

John Kelley, Commissioner of Education Robert Scott, and Texas Education Agency,
Appellees




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. D-1-GN-06-001375, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING


 
M E M O R A N D U M O P I N I O N


                        This appeal arises out of an employment-contract dispute between appellee
John Kelley and his former employer, appellant North East Independent School District (the
“District”). After unsuccessfully exhausting the District’s grievance process, Kelley sought
administrative review before the Texas Commissioner of Education. When the Commissioner
determined that he lacked jurisdiction over Kelley’s claims and dismissed the appeal, Kelley filed
this suit for judicial review in Travis County district court. The trial court reversed the
Commissioner’s jurisdictional ruling, concluded that the District had breached its contract with
Kelley, and remanded the cause to the Commissioner for further proceedings. The District now
appeals to this Court, arguing that both the Commissioner and the district court failed to properly
apply the substantial-evidence standard of review set forth in section 7.057 of the education code in
reviewing the school board’s determination that the District did not breach its contract with Kelley. 
We will affirm the trial court’s judgment.

FACTUAL AND PROCEDURAL BACKGROUND
                        The District hired Kelley as a special education teacher at Lee High School in San
Antonio for the 2000-2001 school year pursuant to a written “One-Year Probationary Contract.” The
contract, dated March 7, 2000, contained the following relevant terms and conditions:
 
1.         Employee shall be employed on a 10-month basis for the school year
2000-01, according to the hours and dates set by the district as they exist or
may hereafter be amended.
 
2.         The Board shall pay Employee in twelve installments an annual salary
according to the compensation plan adopted by the Board. In the case of
full-time classroom teachers and librarians, compensation shall not be less
than the state minimum salary. Employee’s salary includes consideration for
any assigned duties, responsibilities, and tasks, except as provided in the
District’s supplemental duty schedule.
 
3.         Supplemental duties may from time to time be assigned and paid according
to District’s supplemental duty schedule. This contract does not cover any
payments for supplemental duties. Any such payments are not included as
part of the annual salary. . . .
 
4.         Employee shall be subject to assignment and reassignment of positions or
duties, additional duties, changes in responsibilities or work, transfers, or
reclassification at any time during the contract term.
 
. . . .
 
16.       This contract combines and supersedes all prior agreements and
representations concerning employment. No amendments to this contract
shall be binding unless reduced to writing and signed by both parties.
 
                        The District subsequently posted on its website the 2000-2001 School Work Schedule
and the North East I.S.D. Teacher Salary Schedule.


 The School Work Schedule provided for
employees holding the position of “Teacher” to work 187 days, from August 7, 2000 to June 1, 2001;
the Teacher Salary Schedule likewise indicates that it is “Based on 187 Working Days.”


 Neither
document indicates that 187 days is a “minimum” requirement.
                        Near the end of the school year, Lee’s principal, Donna Taylor, informed teachers that
they would be required to work on graduation day, June 4, 2001. Kelley asserts that prior to this
announcement, which was made at a faculty meeting on May 9, 2001, he had no idea that he was
expected to work on graduation day. At the faculty meeting, Kelley expressed his concern to Taylor
that he and other teachers were being required to work a day that fell outside of their contract term. 
Taylor allegedly responded that if Kelley “had a problem showing up for the kids,” then she would
“take note” of that.
                        Thereafter, Kelley initiated the District’s grievance process, filing his level-one
complaint with Taylor and requesting written confirmation that working graduation would be
voluntary for teachers, rather than mandatory. After a hearing on May 25, 2001, Taylor denied
Kelley’s request for a retraction of the requirement that teachers attend graduation. As instructed,
Kelley reported to work for the June 4 graduation ceremony and then proceeded with his level-two
grievance, seeking compensation for having worked an additional day not covered by his contract.
                        The level-two stage consisted of a conference between Kelley; his representatives,
Steve Jennings and Tom Cummins; and the District’s personnel hearing officers, Ron Martin and
Ike Haines. During the conference, the parties discussed the “10-month basis” provision of Kelley’s
contract alongside the two District publications. Kelley and his representatives explained their
position that the contract was not for an exact ten months—i.e., from August 7, 2000 to June 7,
2001—but instead that it expressly incorporated the dates and 187-day term listed in the schedules,
and thus the June 4 graduation ceremony fell outside of the contract period.


 Following the level-two
conference, Martin issued a written determination that Kelley’s grievance should be denied because
the June 4 graduation date on which Kelley was required to work was within the ten-month contract
period; therefore, Martin concluded that Kelley was not entitled to additional compensation for
working an “extra” day.
                        The final stage of the grievance process, the level-three hearing, was conducted before
the District’s Board of Trustees. At the hearing, the District produced a memorandum dated
August 29, 2000 from the associate superintendent, Dr. Mark Scheffler, to all high school principals
stating that “[a]ll faculty members will be expected to work graduation.” Scheffler explained that
this policy was designed to increase faculty attendance at graduation ceremonies, which had been
a major problem the previous year, when attendance was not mandatory. Board member Quintanilla
asked Martin, on behalf of the District, whether this memorandum amended “the hours and dates set
by the District” in accordance with paragraph one of Kelley’s employment contract. Martin
answered, “Technically, yes, the dates were amended.” Quintanilla then asked Martin whether the
associate superintendent’s memorandum was applied at other high schools throughout the school
district. Martin stated that he did not know whether the policy of mandatory attendance at graduation
was uniformly applied, and that although Lee High School’s graduation on June 4 was “the last” of
the graduation ceremonies in the District, he was aware of other District employees who had worked
graduation ceremonies after June 1.


 When asked the same question, Dr. Scheffler stated that he was
sure that “there were exceptions across the District just like there was [sic] at Lee High School,” and
that faculty members who had other commitments or illnesses in the family “worked [those issues]
out with the individual principal.”
                        The parties then turned to paragraph four of Kelley’s employment contract, which
stated that Kelley would be subject to assignment or reassignment of positions or duties, additional
duties, changes in responsibilities, and transfers or reclassification at any time during the contract
term. Dr. Scheffler stated that this provision was relevant because it reserved the school
administration’s right to modify the contract as needed at any time during the school year. Kelley
responded that he did not believe that this was a reasonable interpretation if it meant imposing
mandatory work days outside of the 187-day contract period. Questioning continued as follows:
 
Mr. Quintanilla:          But you can see that it’s not outside of the contract period?
 
Mr. Kelley:                 I think it is outside of the contract period. The contract period
was published on the webpage for the District as 187 days
ending June 1.
 
. . . .
 
Mr. Cummings:          By that interpretation, that the District is applying here we can
have a principal require us to work on Christmas day. They
have imposed no limitation on themselves by that ten month
rule. He says from August 7 to June 7, if that is the District’s
interpretation, we have to go to the teachers and tell them that
they can be required to work on Christmas day because the
Board said so.
 
Mr. Quintanilla:          Is that true, Mr. Martin?
 
Mr. Martin:                 Sir, the minimum requirement for teachers as specified in the
Education Code is 187 days minimum. The contract is the
legally binding issue before us this evening and I do not
honestly believe that anyone in this room thinks that any
principal would require any teacher to work Christmas day,
Saturday or Sunday.
 
Mr. Quintanilla:          But, we’re only asking as far as your interpretation of this
contract what has been reserved to the administration. So
from a hypothetical point of view, if in fact under paragraph
four the interpretation is it can be reassigned as the District
sees fit, if that is in fact the reservation according to the
District, why couldn’t the District say, “by the way, we want
you to work New Year’s Day as well.”
 
Mr. Martin:                 [S]ir, I suppose that the District could, but I think common
sense would prevail and that that will not happen. The
minimum number of days is 187, or as may be amended. This
contract technically, then, was amended because 187 was the
minimum number of days.
 
Mr. Quintanilla:          So you are saying that, hypothetically, the District could in
fact put a memo out saying “our teachers will be required to
work on Christmas or New Year’s Day?”
 
Mr. Martin:                 Sir, we could put a memo out stating most anything, but again
that is not going to happen. The minimum number of days for
the ten month pay period, the salary paid over the ten month
or twelve is the monthly salary; there is no daily rate. I don’t
think that we are going to require teachers to work Saturdays,
Sundays, or holidays. . . . .
 
                        As to whether the memorandum that Dr. Scheffler sent to high school principals in
August 2000 effectively amended Kelley’s contract term in accordance with paragraph four, Kelley
stated that the memorandum was sent only to the principal, not the teachers, and that he had no
knowledge of the memorandum or its contents before the present dispute arose in May 2001. Nor
is there any evidence that the contents of the memorandum were posted on the District’s website.
                        After further discussion, the Board moved to uphold the administration’s level-two
hearing determination; the motion carried with one member opposed. Kelley then filed a petition
for review with the Commissioner asserting that the District had violated a material term of his
employment contract relating to the number of days he was required to work in order to earn his
annual salary, which caused him monetary harm because he was forced to render services for which
he was not paid. He further pleaded that the Board acted arbitrarily, capriciously, and unlawfully
in denying his level-three grievance.
                        The Commissioner determined that (1) Kelley’s employment contract provided that
the working days were to be set by the District; (2) the four corners of the contract itself did not
disclose the number of days to be worked; (3) uncontradicted evidence established that the District
had set the requirement for 187 working days for the 2000-2001 school year; and (4) there was no
evidence that the Board had set a different number of working days. Based on the foregoing and
“[a]pplying the substantial evidence standard,” the Commissioner determined that Kelley and the
District had contracted for him to work 187 days. Thus, by working graduation, the Commissioner
found, Kelley had worked a day not covered by his employment contract. Nevertheless, the
Commissioner dismissed Kelley’s claim for lack of jurisdiction on the ground that the
Commissioner’s jurisdiction is limited to cases in which a person is aggrieved by “a written
employment contract between the school district and a school district employee.” See Tex. Educ.
Code Ann. § 7.057(a)(2)(B) (West Supp. 2010). Reasoning that Kelley’s grievance sounded not in
breach of contract (because June 4 was “outside” of Kelley’s contractual work year) but in
something closer to quantum meruit, the Commissioner determined that the dispute did not
satisfy subsection (a)(2)(B) or any other provision in section 7.057 over which he could
exercise jurisdiction.
                        Following the dismissal, both Kelley and the District filed motions for rehearing,
which were overruled by operation of law. Kelley then filed suit in Travis County district court. The
District answered, filed a counterclaim for declaratory relief against Kelly, and filed a cross-claim
for judicial review of the Commissioner’s decision. The Commissioner and Kelley sought dismissal
of the District’s cross-claims and counterclaims, respectively, on the basis that they were an untimely
“appeal” of the Commissioner’s decision and were therefore barred due to the District’s failure to
timely file a petition for judicial review in district court. The trial court granted these pleas to the
jurisdiction and dismissed all of the District’s claims challenging the decision of the Commissioner.
                        Proceeding to the merits of Kelley’s appeal, the district court, after admitting the
administrative record into evidence, reversed the Commissioner’s jurisdictional determination,
concluding that the District had materially breached its employment contract with Kelley and,
therefore, Kelley’s challenge was proper under section 7.057 of the education code. The district
court made the following relevant fact findings in support of its judgment:
 
2.         In March 2000, John M. Kelley entered into a One-year Probationary
Contract with the North East Independent School District as a Certified
Classroom Teacher.
 
3.         Under the contract, Kelley was employed on a 10-month basis for the school
year 2000-01 “according to the hours and dates set by the district as they exist
or may hereafter be amended.” The District published the 2000-01 School
Work Schedule[,] which stated that a high school teacher would work
187 days, from August 7 to June 1.
 
4.         Because the 2000-01 School Work Schedule specifically stated dates of work
in terms of the number of days to be worked and by position, the number of
days was a material term of the contract.
 
5.         The employment contract stated that Kelley would be paid a salary according
to a plan adopted by the Board. The District published the 2000-01 Teacher
Salary Schedule “Based on 187 Working Days.” Under the schedule, a
teacher’s pay is determined by years of experience and whether the teacher
holds an advanced degree.
 
6.         Because Kelley’s salary was expressly stated as “Based on 187 Working
Days,” the relationship between the salary and 187 days was a material term
of the contract. See Restatement (Second) of Contracts, §§ 202 to 206.
 
. . . .
 
9.         The District’s requirement that teachers work an additional day beyond the
published School Work Schedule was a breach of the contract because it
effectively increased his work days from 187 to 188 and, correspondingly,
reduced Mr. Kelley’s salary from $209.52 per day to $208.41 per day.
 
10.       The District’s requirement that teachers work an additional day beyond the
published School Work Schedule was a breach of the contract because it
effectively extended the School Work Schedule for teachers from the
published June 1, 2001 date to June 4, 2001, and from 187 days to 188 days.
 
11.       The District drafted the contract signed by Mr. Kelley, the 2000-01 School
Work Schedule, and the 2000-01 Teacher Salary Schedule. The District is
bound by the terms of its contract and the additional terms published. 
Restatement (Second) of Contracts, § 206.
 
The trial court remanded the case to the Commissioner for consideration of the damages to be
awarded to Kelley. The District now appeals.

DISCUSSION
                        On appeal, the District asserts that the district court’s judgment must be reversed
because both the district court and the Commissioner failed to apply the mandatory
substantial-evidence standard of review set forth in section 7.057(c) of the education code.


 Under
the proper standard, the District asserts, the Board’s interpretation of the contract should have been
entitled to a presumption of validity because it is supported by substantial evidence.
                        Section 7.057 of the education code governs appeals from a local school district to
the Commissioner. Subsection (a) defines the Commissioner’s jurisdiction and provides, in pertinent
part, that a person aggrieved by actions or decisions of any school district board of trustees that
violate a provision of a written employment contract may appeal in writing to the Commissioner,
if a violation causes or would cause monetary harm to the employee. Tex. Educ. Code Ann.
§ 7.057(a)(2)(B). Further, as the District points out, “the commissioner shall issue a decision based
on a review of the record developed at the district level under a substantial evidence standard of
review.” Id. § 7.057(c). Under this standard, the Commissioner examines the record to determine
whether the school board’s decision resulted from a prejudicial error of law, such as an abuse of
discretion, an action taken in excess of authority, a violation of law, or fact findings that are
unreasonable in light of the evidence found in the record of proceedings before the school board. 
Ysleta Indep. Sch. Dist. v. Meno, 933 S.W.2d 748, 751 n.5 (Tex. App.—Austin 1996, writ denied). 
The Commissioner is restricted to the record before him and may not re-weigh the evidence, find
facts, or substitute his judgment for that of the school board regarding matters properly within the
board’s discretion. Id.
                        The District argues that the Board’s decision to deny Kelley’s grievance is supported
by substantial evidence. In particular, the District looks to the parties’ arguments to the Board,
questions asked by the Board members, the written employment contract, the salary and work
schedules, and records of Kelley’s level one and two hearings.


 The District relies most heavily on
the August 29, 2000 memorandum from Dr. Scheffler, which the District characterizes as an
effective unilateral amendment of Kelley’s written contract by the District, consistent with the
District’s right to assign and reassign duties as described in paragraph four of the contract. In light
of this record, the District asserts that the Commissioner, in finding that Kelley’s contract was for
a specific number of days, improperly substituted his judgment for that of the Board.
                        Kelley and the Commissioner respond that the District, by failing to timely seek
review of the Commissioner’s decision, and by failing to appeal the district court’s grant of their
pleas to the jurisdiction, is barred from complaining of any error in the Commissioner’s decision. 
At the same time, however, the Commissioner maintains that the District could not have filed a suit
for judicial review of the Commissioner’s decision, because the District was not a party “aggrieved”
by a decision of the Commissioner. See Tex. Educ. Code Ann. § 7.057(d). Assuming without
deciding that the District waived its challenge to the Commissioner’s decision, neither Kelley nor
the Commissioner have shown that the District is prohibited from complaining about error in the
trial court’s judgment rendered in Kelley’s suit for judicial review. In other words, once Kelley
invoked the trial court’s jurisdiction to “determine all issues of law and fact” in his appeal of the
Commissioner’s decision, see id., and the court rendered its final, appealable judgment pertaining
to those issues, nothing prevents the District from seeking review of that judgment before this Court.
                        Like the Commissioner, the trial court found that the employment contract was for
187 days. But whereas the Commissioner found that requiring Kelley to work an additional day did
not violate the contract because the “188th day” was outside of the contract period, the trial court
determined that the District’s actions did constitute a breach of the contract. Because it determined
that the District had breached the contract, the court concluded that the dispute fell within the
Commissioner’s jurisdiction.


 Therefore, the trial court reversed the Commissioner’s jurisdictional
determination and remanded the dispute to the Commissioner to determine the damages owed to
Kelley as a result of the breach of his employment contract.
                        In both proceedings, the Commissioner and the trial court had to interpret the written
contract to determine whether, as a threshold matter, the dispute fell within the Commissioner’s
jurisdiction. See Smith v. Nelson, 53 S.W.3d 792, 794 (Tex. App.—Austin 2001, pet. denied)
(considering merits to extent necessary to determine whether dispute was within Commissioner’s
jurisdiction). On appeal, the District does not directly address the jurisdictional issue, arguing only
that the trial court failed to apply the proper substantial-evidence review and give due deference
to the Board’s construction of the contract. Given that they all invite this Court to interpret
the contract, the parties apparently agree that whether the trial court correctly found that
the Commissioner erred in dismissing Kelley’s appeal for lack of jurisdiction depends on whether
there was in fact a breach of his employment contract. And while there is no dispute that the
substantial-evidence standard of review generally applies to appeals of Commissioner decisions, see,
e.g., Havner v. Meno, 867 S.W.2d 130, 132-33 (Tex. App.—Austin 1993, no writ), the parties join
issue as to how that standard operates in this case, given that the interpretation of an unambiguous
contract is purely a question of law. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,
940 S.W.2d 587, 589 (Tex. 1996); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).
                        According to the District, the trial court erred in determining that the District
breached the contract because nothing in the administrative record demonstrates that Kelley’s daily
rate of pay was effectively decreased—in part because there was no daily rate of pay; the contract
provides only for an annual salary. By contrast, Kelley argues that the contract clearly memorialized
the District’s promise to pay Kelley his annual salary in return for working 187 days, and thus by
requiring him to work 188 days, the District reduced his compensation. In so arguing, Kelley
correctly points out that an administrative determination of a legal question, unlike a determination
of a disputed fact, is not entitled to a presumption of validity. See Weslaco Fed’n of Teachers
v. Texas Educ. Agency, 27 S.W.3d 258, 263-64 (Tex. App.—Austin 2000, no pet.) (rejecting
District’s argument that employment contracts should be reviewed under substantial-evidence
standard, rather than de novo). “[A]n agency’s interpretation of an unambiguous contract is not
binding on a district or appellate court.” Id. at 264.
                        Here, no party argues that the contract is ambiguous or that the contracting parties’
intent cannot be discerned from the instrument as it is written. We agree that the contract is
unambiguous, as it is susceptible to only one reasonable interpretation. See Grain Dealers Mut. Ins.
Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997) (if contract can be given certain or definite legal
meaning, it is not ambiguous and should be construed as matter of law). Paragraph one of the
contract states that Kelley shall be employed “on a 10-month basis for the school year 2000-01,
according to the hours and dates set by the district as they exist or may hereafter be amended.” It is
undisputed that the District adopted and published the work and salary schedules, which are the only
sources of the starting date, ending date, number of working days, and salary terms of the contract,
and the record contains no evidence that the hours and dates had been set by the District in any
manner or form apart from these schedules.
                        The District argues that the local administrative record establishes that these
schedules were not intended to “modify” the contract in any way and that the Board’s implicit
determination that the schedules are not part of the contract should be binding because it is supported
by substantial evidence. The schedules, however, do not “modify” the contract; on the contrary, they
supply necessary material terms that are otherwise wholly omitted. That they are separate documents
incorporated by reference makes them no less effective. In fact, the contract itself acknowledges
that these terms are not defined under the four corners of the contract but will necessarily
be set by the Board in a separate “compensation plan” and calendar.


 Nor is the Board’s
interpretation of the contract—which, as we have discussed above, is a question of law—subject to
substantial-evidence review.
                        Moreover, the District’s interpretation that the “10-month basis” language defines the
contract term to be a full ten months would mean that the District could require Kelley to work any
number of days during that ten-month period—including weekends and holidays—potentially
transforming a 187-day school year into a 300-day school year for teachers. Martin confirmed that
this is the District’s view, suggesting that although the District could require that commitment of its
teachers, it would be very unlikely to do so because “common sense would prevail.” Irrespective
of whether common sense would dissuade the District from overreaching, we conclude that an
interpretation of the contract that would permit such an abuse is unreasonable and contrary to the
contracting parties’ intent as it is reflected in the contract.
                        It is also unreasonable for the District to suggest that Scheffler’s memorandum
effectively modified the contract term pursuant to paragraph four of the contract, which states that
Kelley “shall be subject to assignment and reassignment of positions or duties, additional duties,
changes in responsibilities or work, transfers, or reclassification at any time during the contract
term.” Nothing in this provision contemplates that the District may unilaterally amend the contract
term, only that if it amends Kelley’s position, duties, or responsibilities, it must do so during the
contract term and in accordance with its provisions. See Central Educ. Agency v. George West
Indep. Sch. Dist., 783 S.W.2d 200, 202 (Tex. 1990) (“The school district’s right to modify the
contract does not imply the power to substitute something entirely different.”).
                        Because we agree with the trial court that the contract unambiguously provided that
Kelley was required to work for a 187-day term, from August 7, 2000 through June 1, 2001, we
likewise conclude that the District breached the contract by requiring him to work beyond his fixed
term of employment. Accordingly, we hold that the dispute is within the Commissioner’s
jurisdiction under section 7.057(a) of the education code, and that the matter should be remanded
to the Commissioner for further proceedings.

CONCLUSION
                        We affirm the judgment of the trial court.
 
 
                                                                                                                                                            
                                                                        J. Woodfin Jones, Chief Justice
Before Chief Justice Jones, Justices Puryear and Pemberton
      Dissenting Opinion by Justice Puryear
Affirmed
Filed: December 9, 2010